PENNSYLVANIA COMPANY

*v.*

PATRICK H. BOYLAN.

*Filed at Ottawa November 20, 1882.*

104  595
24a  207
104  595
67a  361
104  595
70a  466

104      595
104a  ³138

1.  EVIDENCE—*relevancy to counteract effect of other testimony.*  In a case involving the question of negligence of a railway company in suffering loose planks to lie on a culvert between the rails of the track, resulting in personal injury to the plaintiff, the evidence was conflicting as to the fact of the culvert being worked upon on the day before the injury, the section boss and one H., a servant under him, having testified that no work was done on the culvert on the day claimed.  After this the plaintiff's father and mother both testified that the servant, on the day of the accident, said to them that he told the boss the evening before that it was a dangerous way to leave the planks, without being spiked down.  · The court refused to allow the defendant to prove in rebuttal by the boss that the servant never told him anything of the kind:  *Held,* that the proposed evidence, under the circumstances, was proper, and that the court erred in refusing it.

2.  SAME—*corroborative in case of conflict.*  Where there was evidence by the plaintiff that repairs were made by the servants of a railway company, the defendant, on a culvert on a certain day, and that the planks on the same were removed and left lying loose, while on the other side there was evidence that nothing was done to the culvert on such day, which question was a material one in the case, the defendant called a witness who stated that he had been for twenty-three years in the defendant's employ as a carpenter, his work including that of overhauling and repairing culverts, and was acquainted with their durability and use, and described the manner in which he rebuilt the culvert some nine months before the time of the alleged repairs, and that he left it in good repair, and the witness was then asked this question:  "Undisturbed, how long would that condition last?" which the court refused to allow the witness to answer:  *Held,* that the court erred in not allowing the witness to answer, as his answers would have tended strongly to corroborate the testimony on the one side or the other.

3.  SAME—*as to witness' knowledge, or means of knowledge.*  In the same case a witness for the defendant had testified that on Saturday night before the accident, when he left, there was no place on the culvert where the planks were loose,—no place that he knew of.  He was then asked, "Would you have known of it if there were?" which question the court excluded:  *Held,* that the question was proper, and should have been allowed to be answered, although the more correct inquiry might have been to have asked the witness to state what means of knowledge he had as to the condition of the planks.

4. SAME—*as to the occasion for removing the cover from a dangerous excavation.* In the same case a witness on the part of the defendant was asked, "For what purpose, or in what case, would the planking be removed by the company for the purpose of maintaining and operating its road?" to which question the court sustained an objection: *Held,* that an answer should have been allowed to the question. The line of inquiry indicated by these questions would tend to settle the disputed question whether work was actually done on the culvert on the day named.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. T. A. MORAN, Judge, presiding.

Messrs. WILLARD & DRIGGS, for the appellant:

The court erred in disallowing the several questions respecting the culvert and its condition, propounded to the witnesses O'Donnell, Hynes, Gray and Keplinger. "Opinions, like other testimony, are competent in the class of cases in which they are the best testimony, as, when a mere description, without an opinion, would generally convey a very imperfect idea of the force, meaning and inherent character of the things described." 1 Greenleaf on Evidence, (13th ed.) 494, note 1. To the same effect, see *Whittier* v. *Town of Franklin,* 46 N. H. 23; *Lincoln* v. *Taunton Manufacturing Co.* 9 Allen, 181; *Linn* v. *Sigsby,* 67 Ill. 75; *Chicago and Alton R. R. Co.* v. *Springfield and Northwestern R. R. Co.* 67 id. 142; *Alexander* v. *Town of Mt. Sterling,* 71 id. 366; *Hopkins* v. *Indianapolis and St. Louis R. R. Co.* 78 id. 32; *City of Chicago* v. *McGiven,* id. 347; *Pennsylvania Co.* v. *Conlan,* 101 id. 93.

When a witness is impeached by showing he has made other statements inconsistent with his testimony, the party who first called him has the right to reëxamine him, for the purpose of contradicting or explaining the matter. 1 Greenleaf on Evidence, secs. 462, 467; *Richardson* v. *Kelly,* 85 Ill. 491; *Bock* v. *Weigant,* 5 Bradw. 643; *Robertson* v. *Brost,* 83 Ill. 116; *Commonwealth* v. *Wilson,* 1 Gray, 340; *Dishen* v. *Merchants' Ins. Co.* 11 Metc. 199.

Messrs. MAGEE & ADKINSON, for the appellee, made various points in regard to the right to recover, and upon the facts of the case.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was an action brought in the circuit court of Cook county, July 19, 1881, for damages consequent upon being struck by a piece of plank caught from the covering of a culvert at Forty-seventh street crossing, in Chicago, by a passing locomotive of the defendant railroad company, on Sunday morning, July 20, 1879, whilst plaintiff was standing near the tracks of the railroad. The plaintiff recovered. On appeal to the Appellate Court for the First District the judgment was affirmed, and defendant appealed to this court.

The declaration contains two counts, the first averring that defendant suffered divers of the planks wherewith the culvert under the tracks was covered, near Forty-seventh street, to be and remain unfastened, and piled up and lying crosswise on the railroad; and the second averring that defendant negligently suffered the culvert to be repaired in a bad and unsafe manner, and in such a manner that divers planks with which it was covered were thrown loosely upon the railroad, and suffered to remain unfastened, and to lie crosswise of each other, by means whereof, etc.

All the proof to show negligence of the railroad company consisted in the testimony of plaintiff's mother, and of her near neighbor, Dennis Larkin. Larkin testified that the railroad hands were working on the culvert the Saturday before—that he saw them throwing the plank temporarily on the culvert, and putting on their hats and going home. Mrs. Boylan, plaintiff's mother, testified that she noticed men at work the Saturday before, on the culvert. She noticed they were cleaning the culvert; the men were down in the culvert; that they were working till late in the afternoon.

Witnesses on behalf of the defendant testified that none of the hands of the railroad company worked near Forty-seventh street on the Saturday before the injury; that no work was done at that culvert or at that crossing by any of the railroad men that day. The testimony of these witnesses tended to show that the culvert was overhauled and thoroughly repaired in September, 1878, nine months before the accident, and that the company's track inspector saw it every day thereafter, and that it remained in proper condition up to five o'clock Saturday night. The accident occurred at half-past seven o'clock the next morning, when it was found that all the planks between the two rails of the track in question had been pried up—that they were loose at both ends.

One of the assignments of error before the Appellate Court was, that the circuit court erred in the rejection of testimony. Gruhlky, the section foreman on the tracks at and in the vicinity of Forty-seventh street during the year 1879, and Hynes, a section man under Gruhlky, had given testimony that no work was done on the culvert on the Saturday next before the accident, and that the planks on the culvert were all right that day. After this, Mr. and Mrs. Boylan, the father and mother of plaintiff, testified, that on Sunday Hynes said to them that he told the "section boss" (Gruhlky) the evening before that it was a dangerous way to leave those planks, without being spiked down. After the close of plaintiff's evidence, defendant's counsel recalled the witness Gruhlky, and, at the court's direction that an offer of proof be made, the following was made: "We then offer to prove by the witness Gruhlky, who was Hynes' section boss, that the witness Hynes never told him (Gruhlky) anything of the kind testified to by the witnesses Mr. and Mrs. Boylan, namely, that Hynes told them, or one of them, that he told the section boss that it was a dangerous way to leave those planks, without being spiked down." To the proof thus offered the court sustained plaintiff's objection, and excluded

the offered proof. In this we think there was error. This
testimony of the Boylans was, in its tendency, evidence of
the most damaging character against defendant. The natu-
ral impression from it upon the minds of the jury would be,
that the section foreman had notice the evening before that
the planks were left loose upon the culvert, and was warned
that it was a dangerous way to leave them. Defendant
should have been allowed to counteract such effect, so far as
he might by the evidence, that the section foreman did not
receive such notice and warning,—that Hynes did not make
any such statement to him, as testified to by the Boylans.
It is not a sufficient answer which plaintiff's counsel makes,
that it was not sought by the Boylans' testimony to prove the
fact that Gruhlky was told of the condition of the planks, but
only that Hynes said he so told Gruhlky, the purpose being
merely to impeach Hynes, by showing a contradictory state-
ment by him. But evidently the effect would not be limited
to such purpose,—it would tend to impeach the testimony of
Gruhlky as well, and would be calculated to make the impres-
sion upon the jury as above named, and it was but just that
Gruhlky should have been allowed the opportunity to dis-
prove that such a statement had been made to him by Hynes.

The witness O'Donnell had stated that he had been twenty-
three years in the defendant's employ as a carpenter, his
work including that of overhauling and repairing culverts,
and was acquainted with their durability and use. He de-
scribed the manner in which he rebuilt this culvert in Sep-
tember, 1878, and stated he left it in good condition. He
was thereupon asked this question: "Undisturbed, how long
would that condition last?"

The witness Hynes had testified that on Saturday night,
when he left Forty-seventh street, there was no place on the
culvert where the planks were loose—no place that he knew
of. He was then asked this question: "Would you have
known it if there were?"

The witness Gray, who for many years had had charge of all work upon the tracks north of Englewood, was asked this question: "For what purpose, or in what case, would that planking be removed by the company for the purpose of maintaining and operating its road?"

The court sustained an objection to each of these questions. In Hynes' testimony that "there was no place on the culvert where the planks were loose—no place that he knew of," the last clause pretty much nullified the first. The statement that there were no planks loose that he knew of, was of little worth unless he would have known it if any were loose. An affirmative answer to the question put to him, that he would have known it if there had been any planks loose, would have counteracted the injurious effect of the last portion of his testimony, and left the first portion in full force, making it valuable evidence for defendant. Perhaps, in strictness, the more correct inquiry might have been to have asked the witness to state what means of knowledge he had as to the condition of the planks; but yet, we think an answer to the question which was put should have been permitted.

There being evidence on one side that there were repairs made of the culvert, or the planks removed, on Saturday, and on the other side that there was nothing done to the culvert on that day, it had a material bearing whether there was any necessity for making any repairs, or occasion for removing the planking, at that time. The questions to the witnesses O'Donnell and Gray were calculated to elicit information on those points, and the answers, according as they might have been, would have tended to corroborate the testimony on the one side or the other. If, from the length of time since the culvert had been put in good condition, there could be no probable necessity for any repairs at the time of that Saturday, and there could have been no other occasion than that for removing the planks, this would have been corroborative of the testimony that there were no repairs

made or planks removed at that time, and in such a balance of conflicting testimony any corroborative testimony was important. We are of opinion that answers to all the questions should have been allowed.

Without considering any other assignments of error, for the errors indicated the judgment of the Appellate Court will be reversed, and the cause remanded.

*Judgment reversed.*