## Chicago and Erie Railroad Co. v. Jacob Binkopski.

1. APPELLATE COURT PRACTICE.—*Motions Must be in Writing.*—Rule 16 of this court requires that " all motions shall be in writing," and this rule not having been complied with, appellee's argument on his motion to dismiss this appeal can not be considered.

2. INSTRUCTIONS—*Accuracy Required.*—An instruction as to the measure of damages in a personal injury suit should limit the jury in assessing damages to the consideration of injuries resulting from the negligence complained of; and where a plaintiff is suffering from two injuries, for one of which the defendant is in no way responsible, the results of which are hard to separate, an instruction allowing the plaintiff damages for physical pain, mental anguish, pecuniary loss and permanent disability without limitations as to the cause thereof is erroneous.

3. TRIALS—*Misconduct of Counsel.*—The court thinks that the conduct of appellee's counsel was calculated to excite a prejudice in the minds of the jurors against the defense and that the trial court should not have allowed it to pass without reprimand, but should have checked all language and conduct of counsel calculated to make the trial other than fair and free from prejudice.

4. SAME—*Passion, Prejudice or Misconception of Jury not Corrected by Remittitur.*—When a verdict is so flagrantly excessive as to be only accounted for on the grounds of prejudice, passion or misconception, a remittitur does not render the verdict a wholesome one, and it should not be allowed to stand.

**Trespass on the Case,** for personal injuries. Appeal from the Superior Court of Cook County; the Hon. FARLIN Q. BALL, Judge, presiding.

Heard in this court at the March term, 1897.   Reversed  and remanded.
Opinion filed July 15, 189?.   Rehearing allowed and cause reheard at the
October term, 1897.   Reversed and remanded.   Opinion filed December
16, 1897.

W. O. JOHNSON, attorney for appellant; STIRLEN & KING,
of counsel.

EDGAR TERHUNE, attorney for appellee.

MR. JUSTICE WINDES DELIVERED THE OPINION OF THE
COURT ON REHEARING.

Appellee recovered a verdict for $15,000 before a jury in
the Superior Court, for personal injuries, on which, after a
remittitur of $10,000 by appellee, said court entered judg-
ment for $5,000, from which this appeal is prosecuted.

At the March term, 1897, of this court, said judgment
was reversed (opinion July 15, 1897,) because of error, as
shown by the abstract, in giving an instruction on behalf
of plaintiff.   It appeared, for the first time, on petition for
a rehearing, that no such instruction was in fact given; that
said instruction, though appearing by the abstract to have
been given, was wrongfully there, and was not contained
in the record.   Counsel on both sides had failed to call the
attention of the court to the error in the abstract, and as
error was assigned on this instruction, it resulted in the
reversal without a consideration of other instructions or
questions in the case, except a peremptory instruction to find
for defendant.   Counsel should use more care to see that
correct abstracts are presented, or the court may, in future,
exercise its privilege of refusing a rehearing because of fault
in this regard.   It is no excuse for appellee's counsel that
error assigned is not argued by appellant.   It may be that
such error may be considered by the court as waived, still,
where it is apparent, the court is justified in considering it,
particularly in case of a reversal, so that it may be avoided
on a second trial.

In this case a rehearing was allowed because the mis-
leading abstract was prepared by appellant's counsel, and

we have fully reconsidered the case in the new light presented.

Appellee in his brief presents and argues a motion to dismiss this appeal, because, as he claims, no duly authenticated copy of the record of judgment or transcript thereof, as provided by statute, was filed in this court.

A true, perfect and complete transcript of the record in this cause in said Superior Court, according to the certificate of the clerk of that court, was filed on March 11, 1897, in this court, pursuant to a written motion of appellant supported by affidavit filed on the same day, and pursuant to an order of this court.

Appellant had theretofore, on March 3, 1897, which was the second day of March, 1897, term of this court, filed in this court certified copies of the order of judgment of said Superior Court in said cause, and of the appeal bond showing an appeal to this court from said judgment. This motion, if sustained, would prevent the consideration by this court of the merits of this appeal. Rule 16 of this court requires that "all motions shall be in writing and filed with the clerk, together with the reasons in support thereof; and a copy of said motion, and also of the affidavits on which the same is founded, shall be served on the opposite party or his attorney, at least one day before they shall be submitted to the court. Objections to motions must also be in writing."

No motion in writing has been filed in this court to dismiss the appeal, and therefore the motion argued by appellee in his brief will not be entertained, especially as it does not go to the merits of the cause.

Appellee was employed by appellant assisting in repairing cars in its yard in Chicago, and was injured through the alleged negligence of appellant.

The negligence that the evidence had a tendency to support consisted in appellant permitting a hole from six to ten inches deep in the ground close to one of its tracks in said yard to be and remain unfilled, into which appellee, without seeing it or knowing of its existence, stepped and lost

his balance, and staggered or fell against a passing car and was thrown down, run upon and dragged by the car.

Appellant claims appellee was guilty of contributory negligence in not keeping as careful a lookout for passing cars as he should; that he was employed to work in the yard where cars were known to be passing very frequently and liable to come upon him at any time; that this danger was an ordinary hazard of his employment, which appellee assumed, and also that appellant was guilty of no negligence.

After a careful review of the evidence on these points, we are of opinion that under all the circumstances disclosed by it, these were questions of fact for the jury, and since the case may be submitted to another jury, we refrain from a discussion of the merits of appellee's case.    Illinois C. R. R. v. Campbell, 58 Ill. App. 275; Chicago & E. I. R. R. v. Hines, 132 Ill. 169; Porter v. Hannibal & St. J. R. R., 60 Mo. 160; Meek v. New York C. & H. R. R. R., 69 Hun, 488; Babcock v. Old Colony R. R., 150 Mass. 471.

The trial court gave to the jury for appellee, against objections by appellant, the following instruction, to wit:

"The court instructs the jury that the defendant in this case was at the time and place of the alleged accident to the plaintiff bound to exercise reasonable care to furnish and maintain a reasonably safe road-bed, in its railroad yards, and that the plaintiff at the time and place of the alleged accident, and in the absence of any knowledge on his part to the contrary, had the right to presume that the defendant had discharged its duty in that behalf; and if the jury believe from the evidence that at the time and place of the alleged accident to the plaintiff, the defendant had for an unreasonably long time theretofore negligently permitted to exist and remain in the said yard, a certain hole, or negligently made said hole, and if the jury further believe from the evidence that the said hole was so situated and located, and was of such a character as to be at the said time and place of said accident an unsafe and dangerous hole, and if the jury believe from the evidence that the

defendant had notice of the existence of said hole as afore-said, or that the said hole had existed for such a length of time that the said defendant in the exercise of due and ordinary care could have known of the existence of said hole, and could have repaired said hole, in the exercise of due and ordinary care, before said alleged accident, and neg-ligently failed to do so, and that by reason of the existence of said hole as aforesaid, the said plaintiff without notice or knowledge of said hole and the existence thereof, and while in the discharge of his duty and while in the exer-cise of ordinary and reasonable care for his own safety, did at the time and place of the alleged accident declared upon in the declaration on file herein, without fault on his part, step his foot into the said hole."

"And if the jury believe from the evidence that thereby and because thereof the said plaintiff fell between or under the cars of the said defendant, and was thereby and because thereof injured as declared upon in the said declaration, then the jury may find the defendant guilty and assess the plaintiff's damages at such sum as it believes from the evi-dence to be the just compensation for the physical pain and suffering the plaintiff has undergone, if such pain and suf-fering appear from the evidence; for the mental anguish the plaintiff has suffered, if such mental anguish appear from the evidence, for the pecuniary loss of the said plaint-iff, if such pecuniary loss appear from the evidence, and for the permanent disability of the said plaintiff, if any such permanent disability appear from the evidence."

There was evidence before the jury that appellee had received another injury, about four months prior to the injury in question in this case, which confined him to his bed for two months, caused a lameness in his left foot, and he could not do the same work after, that he could before this injury. The evidence is not at all clear that the injury of January 7, 1893, for which this suit is brought, was the sole cause of appellee's impairment of capacity at the time of the trial. The surgeons who testified for appellee, said that they didn't see him until just before the trial, and one

of them, Dr. McIntire, testified that both thighs of appellee appeared to have been injured, and that he could only determine from his examination what appellee's condition then was. Appellee testified that both his legs were hurt and caused him pain; that one leg was hurt before January 7, 1893; that at the time of the trial both his legs pained him if he walked about for one-half hour; that he had to stop; that he couldn't walk any further. He made no distinction as to whether he suffered from the one or the other injury. Appellee's daughter testified that he had pains inside of him, and he was not well in that foot before January 7, 1893; that he was always lame on account of that foot; that he could walk better then, and the company gave him easier work; that now he walks coming and going from the court every day to and from the cars; that he walks slow to church, which is seven blocks; that before January 7, 1893, he walked without a stick, but that it pained him; that now (time of trial), he can't move without a stick.

Appellee also voluntarily, in presence of the jury, pointed out the scars and injuries caused prior to January 7, 1893, as also those which were caused on that day, and his counsel then stated that the one he was going to make the most of looked the least serious.

This being the evidence with regard to the two injuries, it was almost impossible for the jury to separate his condition before January 7, 1893, from his condition after that date; but even if this could be done, in view of the fact that appellee exhibited to the jury the scars and marks of both injuries, still it was highly important that the jury in their assessment of damages should have been directed to consider only the injuries received January 7, 1893, and the results thereof in way of physical pain and suffering, mental anguish, pecuniary loss and permanent disability, limiting these several elements of damages as arising from the injuries received at that time.

This instruction does not limit the jury in assessing appellee's damages to injuries received January 7, 1893, as it should have done particularly in view of the fact of there

being before them evidence of the prior injury quite serious in its nature.    Illinois Central R. R. Co. v. Cole, 165 Ill. 334;  Peoria Bridge Ass'n v. Loomis, 20 Ill. 235;  Chicago, B. & Q. R. R. Co. v. Hines, 45 Ill. App. 299.

The fact that the jury were not so limited may, in some degree, account for the very large verdict rendered in this case, two-thirds of which was remitted before judgment. The criticism of appellant's counsel on this instruction, to the effect that it prescribes a different degree of care and diligence for appellant than for appellee is, we think, not well founded.    The cases cited in support of that contention are cases in which the parties were practically in the same situation as to duty and knowledge of the particular defect in question.    In the case at bar, appellee was charged only with the duty to exercise ordinary care for his own safety. It was no part of his duty to have any special lookout for holes in the freight yard, whereas it was the duty of appellant to exercise reasonable care to furnish him a reasonably safe place in which to do his work, and in order to perform that duty, it was bound to exercise reasonable care to originally construct, and reasonable care to maintain, its yards and tracks in a reasonably safe manner.    What would be reasonable care on appellee's part, in the performance of his regular duties, in looking out for his own safety, in no way connected with the construction or care of the yards, is very different from what would be reasonable care on the part of appellant in the performance of a special duty to do the particular thing, to wit, to see that there were no dangerous holes in its freight yard.    There is also evidence that there was a fresh fall of snow on the ground, which wholly covered the hole which it is alleged caused the accident, and that the hole had been in the yard for months before the accident.

The trial court refused to give the following instruction asked by appellant, to wit:

" You are instructed that the defendant was not bound to furnish a track or road to plaintiff which was absolutely safe, or free from defect.    All the defendant was bound to

do was to furnish a road reasonably safe, and to use ordinary care to see that it was kept free from defects, and if you believe from the evidence that the road-bed at the time when, and at the place where the plaintiff was injured, was reasonably safe, and that the defendant used ordinary care to keep it free from becoming defective, then the plaintiff can not recover, even though it may have, in fact, become unsafe, and your verdict must be for the defendant. Likewise if you believe from the evidence that the said road-bed at the place plaintiff was injured, had been properly constructed, but had since become, and was, at the time of plaintiff's injury, unsafe, still the plaintiff can not recover, if you believe from the evidence that the defendant used ordinary care to have said road-bed inspected, and had no actual knowledge of its defective condition, long enough before the plaintiff was injured, to have repaired the same; and in that case your verdict must be for the defendant."

This instruction, even if in other respects good, as to which there is doubt, should not have been given, because there does not appear to have been any evidence that appellant caused any inspection whatever to be made of its yards at any time prior to appellee's injury on January 7, 1893. There is evidence that there were many persons whose duty it was to inspect appellant's yards and report anything out of order, but none that any of these persons did in fact perform that duty.

The evidence did not show any facts tending to show that appellee's injury was caused by the negligence of a fellow-servant, and therefore appellant's instructions in that regard were properly refused.

It appears that a witness, Coughlin, testified on behalf of appellant, that he was a yard master, and had worked in the railroad business twenty-nine years in the employ of various roads, and had traveled every yard in Chicago for four years. He was then asked this question: "Do you know what the usual condition of road-beds of yards was in the city of Chicago during the month of January, 1893?" which question was objected to by plaintiff as immaterial.

The objection was sustained, and exception taken by defend-. ant. The abstract shows nothing further than that there was argument of counsel on said objection, but fails. to show what, if anything, it was desired or expected to be proved by this witness in this connection. We are therefore unable to tell, in the absence of an offer or statement by counsel, what he expected to prove by this witness in answer to the question propounded. There was no error in sustaining the objection. Howard v. Tedford, March term, Opn. July 29, 1897, and cases there cited; Berkowsky v. Cahill, page 101, this volume, and cases cited.

Appellant claims the judgment of $5,000 is excessive; that the fact there was a verdict of $15,000, from which there was a remittitur of $10,000, shows the jury was actuated by passion and prejudice, and that this passion and prejudice was induced by improper remarks and conduct of counsel for appellee during the progress of the trial. It appears that appellee's counsel, from time to time during. the trial, and while the evidence was being adduced, in the presence of the jury, made use of language insinuating that the defense was keeping a Dr. Sullivan, who attended appellee immediately after his injuries, from attendance upon the court; that certain of defendant's witnesses were not testifying truthfully; that appellee's counsel openly charged that objections were made by defendant's counsel on cross-examination of defendant's witness, for the purpose of giving a cue to the witness; that the date of a certain statement of a. witness called by appellee, which was produced by defendant's counsel on his cross-examination, and purporting to have been made June 18, 1896, about one month before the trial, was written so recently that. the ink was wet, thus indirectly charging appellant's counsel with an attempt to. deceive.

At no time does the language of appellee's counsel, from anything in the record, appear to have been justified by any act or statement of appellant's counsel, or of any one connected with the defense. The trial court in some instances sustained objections of appellant's counsel to the conduct of

C. & E. R. R. Co. v. Binkopski.

appellee's counsel, above noted, but at no time did the court in any way reprimand him, and we think it was calculated to make an impression with the jury tending to excite a prejudice in the minds of the jurors against the defense. We think the trial court should not have allowed the language and conduct of appellee's counsel to pass without reprimand. It should have prevented, by prompt rulings and reprimand, if necessary, all language and conduct of counsel calculated to prejudice the minds of the jury. This question was very fully and carefully considered by this court in the case of W. C. St. R. R. Co. v. Johnson, 69 Ill. App. 151, in which there was a remittitur of one-half the verdict, and the court said : "When a verdict for $20,000 in a personal injury case is tainted by something which vitiates it to one-half its extent, it is a serious question if its other half may be ripened into a wholesome judgment— whether the vice that contaminated it to the extent of one-half did not permeate and invalidate the whole." The judgment was reversed because there was so much in the record which was prejudicial to a cool and deliberate verdict.

The Supreme Court also, in Loewenthal v. Streng, 90 Ill. 74, where there was a remittitur of $4,000 from a verdict of $10,000 in a case of malicious prosecution, said, speaking of the verdict: " When it is so flagrantly excessive as to be only accounted for on the grounds of prejudice, passion or misconception, the remittitur does not remove the prejudice, passion or misconception. These elements may have entered, and probably did enter, into the finding of other facts important to the issue, if not the issue itself. Such feelings would naturally lead to an unfair finding against appellant." The judgment was reversed.

This language of the Supreme Court is peculiarly applicable to the case at bar, in which there was a strong conflict in the evidence as to the existence of the hole which it is claimed was the cause of appellee's injury. If the minds of the jurors were prejudiced against the defense by the language and repeated insinuations of appellee's counsel, and we think that was so, then there was not that cool and de-

liberate consideration of the evidence as to the vital issue
in the case, to wit, appellant's liability on account of negli-
gence, that should be had in every case.  It does not appear
from the record whether appellee voluntarily remitted
$10,000 from the verdict; his counsel in his brief said it
was required by the court before it would enter judgment,
but we think this is not very important.   The amount of
the verdict—considering the injuries of appellee, shown to
be on two separate occasions, one in no way connected with
appellant—the failure of appellee's instructions to confine
the damages to the injury of January 7, 1893, the conduct
of appellee's counsel during the trial, and the remittitur
made, show quite clearly that the verdict was vitiated by
either passion, prejudice or misconception of the jury.   We
think the remittitur does not render the judgment a whole-
some one, and it will be reversed and the cause remanded
by reason of the errors noted.

   Reversed and remanded.