# The Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co. v. Fanny Story.

1. PRACTICE—*Ordering Plaintiff to Submit to Physical Examination.*—The court has no power to require the injured party to submit to a personal examination against his will.

2. EVIDENCE—*Reading Testimony of Witness in Former Case from Bill of Exceptions Compared with Stenographer's Notes Taken at Trial.*—Plaintiff's counsel produced the stenographer who reported the testimony given at a former trial of a witness now said to be insane. He stated that he had compared his notes of the testimony of such witness with the original bill of exceptions filed in that case on appeal, and pointed out minutely wherein the bill of exceptions differed from his notes of her testimony. Plaintiff's counsel then read from such bill of exceptions the testimony of said witness now alleged to be insane. *Held*, that no actual error was committed, although its use for such purpose was of doubtful propriety, especially when referred to as a court document, and the practice is not to be commended.

3. SAME—*Witness' Means of Knowledge.*—Certain of defendant's witnesses who were present at or after the accident, and while the passengers on the train at the time of the collision were still there, were asked in one instance whether, if any of the passengers on that eastbound train had been injured the witness would "probably have known it," and in another instance whether the witness thought he "would have noticed any person if there had been any one there in distress." *Held*, that the court erred in sustaining objections to these questions.

4. SAME—*Efforts of Defendant's Surgeon to Ascertain Who Were Injured.*—A surgeon in the employ of the defendant company who was sent to the scene of the accident, arriving within less than an hour after the collision, was asked if he did or did not make any inquiry among the people there at that time as to whether or not there were any others injured than those he had mentioned, to which question an objection was sustained. *Held*, error. It was clearly competent to show what efforts defendant's surgeon made to ascertain who were injured.

5. SAME—*Part of Conversation Put In Evidence.*—When part of a conversation or a statement is put in evidence by one party, the other is entitled to put in the whole so far as it is relevant.

6. DEPOSITIONS—*When Exceptions Must Be Taken.*—An objection that upon a notice to take depositions of witnesses named "and other witnesses," the testimony of such other witnesses should not have been read to the jury, comes too late when the case has come to trial. It should have been taken by direct application to the court before the case was called for trial and submitted to a jury.

7. REMITTITUR—*From Verdict Which is the Result of Passion or Prejudice.*—Where a verdict is so flagrantly excessive as to be only

accounted for on the grounds of prejudice, passion or misconception, the remittitur does not remove the prejudice, passion or misconception. These elements may have entered and probably did enter into the finding of other facts important to the issue, if not to the issue itself.

**Trespass on the Case,** for personal injuries. Appeal from the Superior Court of Cook County; the Hon. FARLIN Q. BALL, Judge presiding. Heard in the Branch Appellate Court at the October term, 1901. Reversed and remanded. Opinion filed November 11, 1902.

GEORGE WILLARD, attorney for appellant.

JULIUS STERN, JOHN M. SOUTHWORTH and CHARLES M. HARDY, attorneys for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

This is a suit to recover for alleged personal injuries, which appellee claims to have received in a railroad accident. The facts are substantially stated in the opinion reported in P., C., C. & St. L. Ry. Co. v. Story, 63 Ill. App. 239, wherein appellant prosecuted its appeal from a former judgment in favor of appellee. The jury on this second trial returned a verdict assessing appellee's damages at the sum of $19,000. The trial court required a remittitur of $7,000 as a condition of overruling a motion for a new trial. Appellee elected to so remit and judgment was entered in her favor for $12,000.

The record is voluminous. The abstract contains over six hundred pages. We have examined this mass of evidence with care. The largest part of it relates to appellee's alleged physical condition, which she ascribes to the injury she claims to have received at the time of the accident. That there was an accident on the railroad operated by appellant about 11 o'clock of May 7, 1891, is the chief material fact established beyond doubt. It appears to have been caused by the inability or failure of the engineer in charge of one of the two colliding trains to bring it to a full stop in time to prevent his engine from going over a switch and onto the main track upon which the other train was rapidly approaching, having the right of way. The refractory engine was moving very slowly, and

at the time of collision the speed of the other or east-bound train had been greatly reduced by application of the air brakes and reversing the engine. This reduced speed accounts for the comparatively small damage done to the engines and trains. The body of an express car on the east-bound train was forced backward into the baggage car behind it, and the baggageman was killed. On the other train three mail agents were slightly injured, requiring all told not longer than five or ten minutes of surgical attention. So far as was discovered at the time by any one called to testify, no passenger complained or showed any indication of having received any injury whatever.

Appellee was, according to her statement, riding in the rear car of the east-bound train. Neither that car nor the one in front of it left the tracks, nor were they injured. Within two hours after the accident and as soon as practicable, apparently, these cars were attached to another train and the passengers, including appellee, were taken in them to a station, from which they were despatched to their destinations. These two coaches went on through to Pittsburg. Appellee proceeded on her journey to New York, where she arrived early the next morning.

Appellee states that when the collision came she was standing up replacing a time table in her satchel, which was on the rack above her seat. She says that the shock threw her forward and then backward, "wrenching my neck very badly, the blood coming from my nose and ears, and I became almost insensible, and I experienced great pain in my head and neck. I presume I did drop on my seat." No explanation is offered of her failure to make her alleged condition known. The testimony of other passengers in the car, as well as of the railway employes, including the surgeons sent to the scene of the accident expressly to care for any who might be injured. is uniform that none of them saw or heard of any one injured as appellee claims to have been. The railway employes made inquiries among the passengers to find out if any one was hurt, without response. Appellee does not claim to have made any com-

plaint or called any one's attention to her alleged injuries. She states that at a house to which the passengers were taken and given something to eat she lay on a couch suffering from nausea while the others were eating, and that she went into the garden "where I vomited a great deal; blood came from my nose and I vomited blood; then I came into the house and this woman gave me a basin of water to wash my face and remove the blood from my face." In all this appellee is uncorroborated.

The present suit was begun by praecipe, December 11, 1891, about seven months after the accident. The declaration was not filed until February 26th following, and it is claimed by appellant's counsel and not denied, that the filing of the declaration was the first notice the railroad company received that appellee claimed to have been hurt in that accident or that she had been a passenger on that train. It is stated in an affidavit by appellant's attorney that he knew nothing of appellee's whereabouts or the condition of her health up to May, 1894.

The alleged symptoms from which she claims to suffer as the result of injuries she says she then received are almost entirely subjective, the evidence of them resting for its weight, as was said in the opinion of the Appellate Court before referred to, "upon her own statements and actions." It was said in that case, "Looking only at the record the appellee does not inspire us with much confidence in her statement of facts concerning which other proof is preserved, and hence we can not avoid a distrust of those facts of which her testimony furnishes the only evidence. That circumstance should admonish us to look with suspicion upon whatever else (she) he may choose to swear to," quoting from Mr. Justice Caton. The record in this case produces the same impression of unreliability and tendency to exaggeration. For example she states, "I think it was the rear car I was in; the car took fire and some men came in and took an axe and chopped the train. Glass tumbled, oil fell upon my dress, and there was a lamp, either the lamp or a chimney fell near me." Later, on cross-examination

she stated, to quote a single sentence, "All I know about any fire is that a boy came in that car and got an axe. That is all I know about it." The rest of her statement is also manifestly much exaggerated. In respect to other details of what transpired at that time her memory fails her entirely. The trial court in passing upon a motion for a new trial was constrained to say : "Personally I was not attracted by the plaintiff's case, nor did she impress me as one who suffered all that she claimed. That a woman could be seriously injured in such a collision and not let that fact be known to any one here called, for forty-eight hours, seems unnatural. * * * Her manner on the stand impressed me with the belief that she was more desirous of establishing her case than she was of informing the court and jury of the exact facts and consequences of the accident." The record seems to us to fully justify the impressions thus stated by the learned judge.

A number of alleged errors are urged upon our attention, some of which require consideration. It is insisted by appellant's attorney that the court erred in sustaining a general objection to questions put to appellee asking whether she had any objection to having Dr. Billings, or any reputable honest physician, make an examination to ascertain her physical condition. It appears, however, that at a later time during the trial she was recalled at the instance of appellant's attorney and asked if she had any objection to being examined professionally by one or two physicians of highest repute and standing in the profession. She answered that she had objections, repeating her refusal in answer to other questions. The fact that she would not submit to examination by physicians other than those of her own selection was thus brought to the jury's attention, and if there was error in the former ruling in that respect it was corrected.

Appellant subsequently moved for an order requiring her to submit to such physical examination. The motion was properly denied in accordance with the ruling in P., D. & E. Ry. Co. v. Rice, 144 Ill. 227–232. The motion papers

were subsequently offered in evidence to be read to the jury, but were not admitted. No reason appears why they should have been. The facts stated in the accompanying affidavit were susceptible of proof in the usual way, and if deemed material, the proper witnesses could have been called and examined.

It appears that appellee's attorneys produced the stenographer who reported the testimony given at the former trial of a witness now said to be insane. He stated that he had compared his notes of the testimony of such witness with the original bill of exceptions filed in that case on appeal, and pointed out minutely wherein the bill of exceptions differed from his notes of her testimony. Appellee's attorney was then allowed to read, over objection, from said bill of exceptions, the testimony of said witness now alleged to be insane. It is urged that this was prejudicial error. The testimony so read, however, was shown by the testimony of the stenographer to be correctly reproduced in the transcript as read. It was not read as a bill of exceptions but as a corrected transcript. It is not shown wherein appellant was thereby prejudiced, and no actual error in this respect seems to have been committed. Bredt v. Simpson, Hall, Miller & Co., 95 Ill. App. 333–334. Its use, however, for such purpose was of doubtful propriety, especially when referred to as a court document, and the practice is not to be commended.

It is urged that upon a notice to take depositions of witnesses named "and other witnesses," the testimony of such other witnesses should not have been read to the jury, it appearing that objection was made to the taking of such testimony by appellant's attorney in attendance at the time. The objection, however, made at the trial, came too late. It should have been taken by direct application to the court before the case was called for trial and submitted to a jury. Moshier v. Knox College, 32 Ill. 155–163; Webb v. The Alton M. & P. Ins. Co., 5 Gilman, 225; R. R. I. & St. L. R. R. Co. v. McKinley, 64 Ill. 340; Independent Dryer Co. v. Livermore Foundry & Machine Co., 60 Ill. App. 394.

Certain of appellant's witnesses who were present at or after the accident, and while the passengers on the train at the time of the collision were still there, were asked in one instance whether, if any of the passengers on that east-bound train had been injured, the witness would "probably have known it;" and in another instance whether the witness thought he "would have noticed any person if there had been any one there in distress." Objections to these questions were sustained and it is urged that this ruling was error. We are inclined to the opinion that the questions were proper. Appellee states that she was there, and the witnesses testified that they observed the passengers and were mingling with them and the people who had gathered around. Similar questions were sustained in Penn. Co. v. Boylan, 104 Ill. 595–599–600; C. & A. R. R. Co. v. Dillon, 123 Ill. 577. The testimony of appellee that she was injured and was bleeding at the nose and ears and part of the time scarcely conscious, is relied upon to connect her alleged present condition with the accident. If she made no complaint and no one discovered at the time that there was any one there injured, as she states, it was competent for appellant to show whether the witnesses present would have known it if any one had been suffering as appellee claims to have been at that time. Perhaps in strictness the form of the questions might have been changed, but it was proper to show what opportunities for knowledge they had, and what was done, what inquiries were made, if any, and how and where they were made, to ascertain who was or claimed to be injured, and whether in the opinion of the witnesses any such injured person would have escaped their observation. We regard this as important in its bearing upon a vital point in the controversy, viz., whether appellee was in fact injured as she claims to have been at that time. Her whole case rests upon the answer to be given to this question. The only positive evidence that she was so injured is her own testimony and that, although discredited in the opinion of the court by reckless and extravagant statements, has been accepted by the jury. Whether

this would have been the result had the testimony in question and other similar evidence been admitted, it is impossible to say.

The surgeon then in the employ of appellant who was sent to the scene of the accident, arriving within less than an hour after the collision, testified that he treated the three injured mail agents and that he made inquiry among the people there at that time as to whether any others were injured. The question was put to him, "Did you, or did you not, make any inquiry among the people there at that time as to whether or not there were any others injured than those you have mentioned? State what you did in that respect." An objection to this question was sustained on the ground that it must first be shown that what was said or done was in the presence of Mrs. Story, the appellee. Repeated efforts were made to introduce this testimony, and each time the questions were ruled out on the same ground. Had the evidence been admitted, especially if supported by testimony of passengers or others who heard such inquiries, if any there were, it might have had an important bearing upon the issue. We think it was erroneous to sustain the objection. It was entirely competent to show what efforts appellant's surgeon made to ascertain who were injured. If he made such inquiries, generally, among the passengers and others present, and none of them called his attention to appellee's alleged condition of distress, evidence of such facts was competent. It was for the jury to determine whether, if appellee was injured as she states, "the blood coming from my nose and ears, and I became almost insensible and I experienced great pain in my head and neck," her condition would have escaped the observation of those about her at the time, and whether some of them would have called the doctor's attention to her condition, whether appellee heard the inquiry or not. The admissibility of the evidence did not rest upon absolute proof that appellee heard the inquiries. But she herself states that she was there or thereabouts at the time. It was competent to show where and how such inquiries

were made, if such were the fact, to enable the jury to determine whether appellee must have heard them. If appellee knew or was informed that a surgeon was there especially to care for any who were injured, and was by reason of her alleged injuries in need of a doctor's services, as, if we believe her own statement, it would seem she must have been, it was for the jury to determine whether her silence is consistent with her having been injured as she claims to have been.

We are compelled to conclude also that the memorandum upon which Dr. Billings was cross-examined in detail, and which upon re-direct examination was offered in evidence by appellant's counsel, should have been admitted. The memorandum contained notes of an examination of the plaintiff made by the doctor in 1892 at St. Luke's Hospital. It was produced at the request of appellee's attorney, and with it in his hand he cross-examined the doctor with reference to alleged interlineations, why a certain statement was not in it, and as to words it contained. It thereupon became proper for appellant's attorney to introduce it in evidence to show just what the interlineations were and what it did contain. When part of a conversation or statement is put in evidence by one party, the other is entitled to put in the whole so far as it is relevant. Scott v. The People, 141 Ill. 195–214; Barnes v. Northern Trust Co., 169 Ill. 112–121.

After the court had instructed the jury, appellee's attorney addressed the court in their presence as follows: " If the court please, the jury, I think, ought to be instructed that there is a limit to their finding, the limit of the *ad damnum* of the declaration." The *ad damnum* was $25,000. It is perfectly clear that this remark was made for the benefit of the jury and not for the court. Counsel knew that if he desired an additional instruction it would have to be submitted in writing. The remark is sought to be excused upon the ground that after appellee's attorney had made his opening address to the jury after the close of the evidence, appellant's attorney waived his right to address

the jury, thus precluding the plaintiff's attorney from a closing address. It is said that this is "considered among lawyers to be an unfair advantage." However that may be, and we are not to be understood as agreeing with this statement, it could not justify such violation of the rules of correct procedure. That in an argument to the jury they might have been told what the *ad damnum* was, and that the verdict should in no event exceed that sum, or that an instruction to that effect might have been given (East St. L. Con. Ry. Co. v. O'Hara, 150 Ill. 580–584; W. C. St. R. R. Co. v. Dedloff, 92 Ill. App. 551), affords no excuse for the remark under consideration, the effect of which is characterized by the trial court as startling, "to express it mildly, by its inappropriateness."

The learned judge who presided at the trial expressed his opinion that the verdict of $19,000 indicated that the jury was moved either by passion or prejudice. He therefore required a remittitur of $7,000 as a condition of entering judgment in favor of appellee. This reduced the finding to the amount which on a previous trial the Appellate Court found to be excessive. In a case where, as here, the right of plaintiff to recover at all rests so absolutely upon her own evidence, which is in important respects not substantiated by her conduct, a verdict which is the result of passion and prejudice to such an extent as to require so large a remittitur can not escape the suspicion that it is tainted not only in the amount, but in the finding upon questions of fact on which the verdict is based. "When it is so flagrantly excessive as to be only accounted for on the grounds of prejudice, passion or misconception, the remittitur does not remove the prejudice, passion or misconception. These elements may have entered and probably did enter into the finding of other facts important to the issue if not to the issue itself." Loewenthal v. Streng, 90 Ill. 74–76; C. & E. R. R. Co. v. Binkopski, 72 Ill. App. 22–31; Chicago City Ry. Co. v. Fennimore, 78 Ill. App. 478–481; Nicholson & Sons v. O'Donald, 79 Ill. App. 195–200. This is not a case where there being "no error in procedure, the evidence supports

the verdict for the larger part of the amount awarded, and it can not be said that the amount of the verdict itself indicates an improper motive on the part of the jury; a remittitur cured the verdict." See Cicero & Proviso St. Ry. Co. v. Brown, 89 Ill. App. 318–327.

We have not deemed it necessary to consider in detail additional objections urged by counsel, inasmuch as the case must be retried. For the reasons indicated, the judgment of the Superior Court must be reversed and the cause remanded.