[No. 9696.  Department Two.  October 28, 1911.]

JUSTICE LEEK *et al.*, *Respondents*, v. NORTHERN PACIFIC RAILWAY COMPANY, *Appellant.*[1]

CARRIERS—PASSENGERS—EJECTION—DAMAGES—NOMINAL DAMAGES —MENTAL ANGUISH. Where plaintiff's son was accidentally killed by a rifle shot while on a train, the railway company has no right, on removing the body, to compel the plaintiff and her family to leave the train, their fares having been prepaid to their destination, and is liable in nominal damages for wrongful ejection; but the plaintiff cannot recover for mental anguish in being made the object of charity, where it appears that her acceptance of voluntary contributions from the citizens was not essential to her continuance of the journey.

SAME—EJECTION—SPECIAL DAMAGES—ITEMS RECOVERABLE. Where plaintiff's son was accidentally killed by a rifle shot while on a train, and she and her family were wrongfully ejected on removal of the body before reaching their destination, plaintiff's expenses of the stop-over for several days and purchases of clothing cannot be recovered as special damages, where it appears that they were not the direct and proximate result of the ejection, and moreover were paid from voluntary contributions made to the plaintiff by the citizens of the town.

NEW TRIAL—EXCESSIVE VERDICT. A verdict for $500 for a wrongful ejection from a train, where the plaintiff was entitled to only nominal damages, is the result of passion or prejudice, and should be set aside and a new trial granted.

Appeal from a judgment of the superior court for Pierce county, Card, J., entered March 21, 1911, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for damages for ejecting a passenger from a railway train. Reversed.

*Geo. T. Reid, J. W. Quick,* and *L. B. da Ponte,* for appellant.

*Davis & Neal, Frank C. Neal,* and *A. O. Burmeister,* for respondents.

[1]Reported in 118 Pac. 345.

MORRIS, J.—In an action for wrongful ejectment of Mrs. Leek from one of appellant's trains, respondents obtained a judgment for $500, and the company appeals.

The circumstances are these: On October 16, 1909, while Mrs. Leek with her four children, aged 20, 16, 13, and 9, was a passenger on one of appellant's trains, en route to Tacoma, and while passing through Montana, about a mile east of Big Timber, a fourteen-year-old boy, with a twenty-two rifle, shot at the train as it passed him, and instantly killed respondents' boy, then thirteen years of age. The train pulled into Big Timber, where the conductor removed the body from the train and turned it over to the coroner. He then told Mrs. Leek she would have to leave the train, and upon her inquiry as to where she should go, he directed her to go to a hotel. She explained to the conductor that she had no money to pay necessary expenses, to which he replied: "That makes no difference. The superintendent of the road telegraphs me and told you to go there, and you go there." Mrs. Leek then left the train with her family, and went to the hotel, where she remained from Saturday afternoon until Tuesday night.

In the meantime an inquest had been held, the body prepared for burial, and her husband, who had been telegraphed for, arrived. Tuesday night the family, with the body of the child, resumed their journey. The citizens of Big Timber, learning of the situation and wishing to express their sympathy for Mrs. Leek in her distress, on Saturday presented her with $145, which she made use of in paying the expenses of the stop-over, and in purchasing some clothing. Mrs. Leek says she felt humiliated at being an object of charity, and that it made her "feel as though she was on the town." In addition to general damages, special damages, including a $38 hotel bill, $20 for clothing, and $4.50 for telegrams, are pleaded. Prior to bringing suit, a demand was made upon the company for these amounts, in addition to $5 paid a physician at Big Timber, and $25 paid for an option on some real estate, which was claimed as lost on account of the delay at Big Timber.

In directing Mrs. Leek to leave the train, the company committed an actionable wrong. It had an undoubted right to remove the body of the deceased child from the train. Its duty to itself, the other passengers, and to the state in which the killing occurred, demanded that it do so. But this right and duty did not extend to the removal of the mother from the train. Having paid her fare to Tacoma, she was entitled to be carried to her destination on that train, and leave the body of her slain child with strangers. We apprehend her mother love and instinct would not have permitted her to do so, and that she would have remained with the body of her child. It was, however, for her to determine her action in the matter, and not for the company, and when it assumed to act for her, and dictate what she should do, it committed an actionable wrong, for which Mrs. Leek is entitled to recover damages; compensatory if proven, otherwise nominal.

The same technical application by which we must determine the right of action in Mrs. Leek must be made use of in ascertaining her proof of damages, and we find none. The payment of the hotel bill and the purchase of clothing, the only items upon which proof is offered, were not the proximate result of her ejection from the train, but of her awaiting the arrival of her husband, the inquest over the body of her child, and preparing its body for burial. She had the right to remain on the train if she was so disposed, and she had the same right to take the next train and leave the remains of her child to the tender ministrations of strangers, and thus eliminate the hotel bill and expense for clothing. The ejection from the train was not, therefore, the proximate cause of these expenditures; but it was rather her voluntary choice, pending the inquest and arrival of her husband.

If we are to look at it on a cold-blooded, dollar-and-cent basis, she suffered no pecuniary loss by her stay at Big Timber. She paid a hotel bill of $38 for herself and family. She expended $20 in the purchase of clothing for herself and family, which doubtless was used and became of some value

subsequent to her leaving Big Timber, and could hardly be called a total pecuniary loss. The citizens of Big Timber contributed $145 to her. So that financially her stay at Big Timber resulted in no pecuniary loss for which she need be compensated. She says she was distressed at being an object of charity. She was not an object of charity, unless she voluntarily chose to make herself such. She need not have accepted the money unless she chose. She had telegraphed for her husband, who arrived at Big Timber the day before there was any payment of the hotel bill. The railway company is not entitled to any offset because of this contribution by the citizens of Big Timber. Neither can it be charged with any expenditure which was not the direct and proximate result of its act. The poor mother doubtless suffered great grief, and her distress was deep. But if we could approximate her grief and distress, we apprehend it was caused by the death of her boy, and in sorrow and grief over his untimely end. Mental anguish was undoubtedly hers, but it was anguish at the loss of her son. Such would be the natural and ordinary condition of the average mother under like circumstances, and there is no proof that it was any different in this case, outside of what she terms her distress in accepting the $145. The jury probably felt the same sympathy for her as did the citizens of Big Timber, but instead of contributing their own money, they sought by their verdict to enforce a contribution from the railway company. We find no proof of any damage for which the law awards compensation, other than the wrongful act of the railway company in ejecting Mrs. Leek from the train, which act being wrongful, damages are presumed without proof, and she would be entitled to presumptive or nominal damages.

As was said in *Olson v. Northern Pac. R. Co.*, 49 Wash. 626, 96 Pac. 150, 18 L. R. A. (N. S.) 209, in discussing an ejectment case:

"The verdict in this case is out of all reason. There was no financial loss, there was no injury to the person, there was

a naked violation of a technical legal right which would entitle the respondent to little more than nominal damages."

Further on in the same case it is said:

"We might follow our usual practice and reduce the judgment to such sum as the respondent is entitled to recover in our view of the facts, and require him to accept that amount or submit to a new trial, but the right of recovery is doubtful at best, and the verdict discloses such passion and prejudice on the part of the jury that it would be unjust to hold a litigant foreclosed by any of the findings. The judgment is therefore reversed and the cause remanded for a new trial."

The same order should be entered in this case, because of the excessive damages allowed in the verdict. Respondents are entitled to nominal damages; nothing more.

The judgment is therefore reversed, and a new trial ordered.

DUNBAR, C. J., CROW, ELLIS, and CHADWICK, JJ., concur.