GULF, COLORADO & SANTA FE RAILWAY COMPANY v.
CLYDE L. DARBY.

Decided March 10, 1902.

**1.—Railway Company—Master and Servant—Track Obstructions—Inspection—Assumed Risk.**

A railroad switchman does not, in entering the service, assume risks that are the result of the company's negligence unless they are obvious, or he had knowledge thereof, or with ordinary care might have known of them; nor does he owe any duty of inspection to discover obstructions dangerously near the track and due to the company's negligence, though they are permanent in character and were already erected when he entered the service.

**2.—Same—Negligence—Contract Exemption from Liability—Public Policy.**

A contract whereby a railroad employe exempts the company from liability for its negligence in erecting structures dangerously near its track is void as against public policy.

**3.—Same—Employe Knowing of Danger—Question for Jury.**

Where a switchman, injured at night and while on top of a car by the roof of the company's oil house projecting over the track, knew when he went on the car that the house was close by, it was nevertheless for the jury to determine whether he knew of the dangerous projection of the roof, or could have known of it by the exercise of ordinary care.

**4.—Same—Danger of Structure—Evidence in Rebuttal.**

The railway company having introduced evidence that such projection of the roof causing the injury was necessary to the building, plaintiff was entitled to show on cross-examination that a change had been made in the roof since the accident.

**5.—Same—Notice to Employe—Charge.**

A stipulation in plaintiff's application for employment, that at some undefined points on the company's 1000 miles of road there were various kinds of side obstructions which might be dangerous, and of the location of which he was to inform himself so as to avoid injury therefrom, was too indefinite to constitute notice of the projecting oil house roof, and a charge that plaintiff had knowledge thereof by reason of such stipulation was properly refused.

**6.—Same—Verdict—Remittitur—Excesiveness.**

Where the verdict for damages was excessive in amount, but was reduced by plaintiff's remittitur to an amount not excessive, the appellate court is not authorized to set it aside on the sole ground that it was, as rendered, so excessive as to show that the jury had not given the case a fair consideration.

**7.—Same—Notice—Contract.**

The fact that the company's superintendent, in employing plaintiff, relied on the statement in plaintiff's application as to taking notice of dangerous structures near the track, could not give it the force of a contract.

Appeal from Harris.   Tried below before Hon. Wm. H. Wilson.

*J. W. Terry* and *Chas. K. Lee,* for appellant.

*Lovejoy, Sampson & Malevinsky,* for appellee.

GARRETT, Chief Justice.—On October 6, 1899, the appellee was injured while in the employ of the appellant as a switchman in its yards at Temple by coming in contact with the roof of a building projecting dangerously near the line of the railroad.   His crew had been sent to the storeroom track to take out a caboose.   It was about 7 p. m., and dark; the men had lighted their lamps.   The caboose was coupled on to the train and the appellee mounted it by a ladder on the side and started to the brake to unlock it, walking with his back to the direction in which the cars were moving, when he was struck by the projecting roof of an oil house between which and the cupola of the caboose he was caught and injured.   He sustained damages to the amount of the judgment.   His injuries were caused without fault on his part, and were the result of negligence on the part of the appellant in having the structure dangerously near the railroad track and in failing to warn him of the danger.

When the appellee was employed he signed an application for the position of switchman upon a form furnished him by the appellant, in which he answered a number of questions in writing, and among others the following: "32.   Do you understand that at some points on this line there are platfroms, sheds, roofs, water tank frames, telegraph poles, bridges, scales, cars, and other side obstructions and trolley wires of street railways, which may be dangerous, and that you must inform yourself of the location of such obstructions and use due care to avoid injury thereby?"   Answer:   "Yes."

The appellant, as master, was required to exercise ordinary care to keep its track in a reasonably safe condition, and this care and condition extended to permanent structures, and while the appellee when he en-

tered the service of the appellant assumed all the risks necessarily incident to the employment, he did not assume those that were the result of the master's negligence, unless the same were obvious or he had knowledge thereof, or by the exercise of ordinary care might have known of them. He owed no duty to inspect and did not absolutely assume the risk of such structures as had been negligently placed dangerously near the track, though they were permanent in character and were already erected when he entered the service. Shearm. & Redf. on Neg., sec. 201.

But the appellant seeks to avoid liability in this case on account of an express contract by the appellee to advise himself of all obstructions in and about the place where he might be called on to work which might be a source of danger or injury. The paragraph of the application above set out is undoubtedly an attempt on the part of the appellant to limit its liability by a contract whereby it undertook to divest itself of its duty to exercise care in providing a reasonably safe track and to warn the appellee of the proximity of all structures which by its negligence had been placed so near the track as to endanger the life and limb of the appellee and to devolve upon him the duty of inspection and assumption of the risk. It is very generally held that such a contract is against public policy. The rule is stated in Greenhood on Public Policy (page 528) as follows: "A contract whereby an employe relieves his employer from responsibility for the latter's negligence, or that of his other employes when he is responsible for their negligence, is void." Judge Cooley, in his work on Torts, concluding his discussion of contracts against liability for negligence, says: "But although the reasons which forbid such contracts have special force in the business of carrying persons and goods, and of sending messages, they apply universally, and should be held to defeat all contracts by which a party undertakes to put another at the mercy of his own faulty conduct." Cooley on Torts, 687. Bailey's Master's Liability, etc. (p. 477), recognizes a conflict of authority upon the question, but it seems to be well settled by the great weight of authority that such contracts will not be upheld on account of public policy. Authorities, supra; also 20 Am. and Eng. Enc. of Law, 2 ed., pp. 154, 155, and note 2; Bonner v. Beam, 80 Texas, 155; Railway v. Wood, 35 S. W. Rep., 880; Railway v. Jones, 92 Ala., 218; Railway v. Orr, 91 Ala., 548; Johnson v. Railway, 86 Va., 975; Railway v. Spangler, 44 Ohio St., 471; 1 Shearm. & Redf. on Neg., sec. 241d.

It must be observed that the contract is not for relief from the negligence of fellow-servants, nor to evade the fellow-servants law (Revised Statutes, article 4560i), but on account of duties owed by the master itself. Wharton says, "No agreement that a party shall be held irresponsible for his negligence * * * is valid." Whart. on Neg., sec. 199. The decisions most in point to the contrary are from the Supreme Court of Massachusetts. Shearman & Redfield characterize the ruling of the Massachusetts courts as "intolerable." Sec. 177.

Railway v. Voight, 176 United States, 498, cited in appellant's brief, may, we think, be distinguished. At any rate the decided weight of authority is as above stated and the rule seems to be recognized in this State. Bonner v. Beam, supra.

For the reasons given, appellant's first, second, third, and fourth assignments or error are not well taken; and it may be stated in this connection that there was no error in the refusal of the court to give the instruction to the jury set out in the sixteenth assignment; all of these assignments being predicated upon the validity of the contract requiring the appellee to take upon himself the duty of inspection and to assume the risk of all obstructions; and the instruction given by the court in the general charge which is assigned as error by the nineteenth assignment, being upon the general duty of the appellant and the appellee and ignoring the contract, was correct.

The fifth, sixth, and seventh assignments of error assail the verdict of the jury as contrary to the evidence. The question of contributory negligence was for the jury, and they could properly find that although the appellee knew the house was close at hand when he went to get upon the caboose, he did not know and would not by the exercise of ordiarp care have known of the dangerous proximity of the roof. The evidence is practically undisputed that the roof projected too far over the track, so as to come dangerously near the top of a passing car, not only as shown by the measurements given in evidence, but by the nature of the accident itself, and the fact that during all the years the roof had remained in the position it was no switchman had ever been hurt by it before, was without force and did not excuse the appellant.

A reversal of the judgment of the court below is sought on the ground that the verdict of the jury was so excessive in amount as to show that the jury had not given the case a fair consideration. We do not understand that his court is authorized to reverse a judgment of the trial court for excessiveness in the verdict where the appellee is willing to remit so much thereof as this court may think is excessive. If it appears from an examination of the record that there is no error for which the judgment should be reversed except that it is excessive in amount, the statute allows this to be cured by a remitter. The verdict of the jury was for $22,500. The appellee voluntarily remitted $7500 thereof, and the trial court, being of the opinion that it was still excessive, required a further remitter of $5000, which was made, and judgment was entered for $10,000. This amount is not complained of, but the complaint is that the amount of the verdict was so excessive as to show such a bias on the part of the jury as prevented them from giving proper consideration to the facts. It is a peculiar case, but the amount for which the judgment was entered having been arrived at by remitter, and being an amount that this court can approve, and the verdict as to liability being supported by the evidence, and there being no other ground for a reversal thereof, it is our duty to affirm the judgment.

The questions asked appellee while testifying as a witness in the case,

in effect, if the railway company had ever made any effort to settle the case with him, was asked on re-examination and was elicited by a question asked appellee by counsel for the appellant; and from the manner in which it came about does not appear to have been harmful. Evidence having been introduced in behalf of the appellant that the projection of the roof was necessary in the construction of the building, it became a proper inquiry on cross-examination whether or not a change had been made in the roof after the accident. Railway v. Johnson, 78 Texas, 536; Fordyce v. Withers, 20 S. W. Rep., 767; Railway v. Anderson, 61 S. W. Rep., 425.

The matters complained of under the twelfth assignment of error, of what transpired with reference to the questions asked the witnesses Rice and Scott by appellee's counsel on cross-examination, appear therefore to have been without harmful effect.

Appellant requested the following instructions: "You are charged that the law required an employe to exercise reasonable care and diligence to avoid injury to himself, and if he fails to use such care and diligence he is not entitled to recover, even though the master has been guilty of negligence. You are therefore charged that if you believe from the evidence, in view of the notice the defendant had given to the plaintiff by the written application, of the presence of obstructions near the track, that the plaintiff, in getting upon the caboose in question and passing by the oil house in question, considering his knowledge of the presence of the oil house and its closeness to the track, failed to look for the said oil house and the roof thereof, and to discover its presence near the track, and that in so failing he failed to exercise such care as a reasonably prudent man would have exercised under the same or similar circumstances, you will find for the defendant, without regard to any other issue in the case."

This charge was properly refused because it incorrectly sought to charge the appellee with notice of the presence of the obstruction given in his application to the company, and assumed a knowledge on his part of the dangerous proximity of the oil house as a result of such notice. It was argumentative and upon the weight of the evidence. The information or notice of obstruction given in the application amounted to no notice at all. In very general terms it stated that at some indefinite points on the appellant's 1000 miles of railroad there were a large number of various kinds of side obstructions which might be dangerous, and that the appellee should inform himself of the location of such obstructions and use due care to avoid injury thereby. It was notice of nothing, and if not binding as a contract simply left the matter where it would have been without saying anything about it. The master can not evade responsibility by a general notice of this sort, and it would have been error to have instructed the jury that in view of the notice given in the written application, if they should believe the appellee guilty of negligence to find for the appellant. The same ob-

Vol. 28 Civil—27.

jections apply to the charges set out in the fourteenth and fifteenth assignments of error, the weight to be given to the application running through them as well as in special instruction number 4 above set out. Other objections might be stated, but the one mentioned is sufficient to condemn such a charge.

The instructions requested by the appellant to be given in charge to the jury as shown by the seventeenth and eighteenth assignments of error were not pertinent to any possible issue in the case, because the fact that an office boy, without authority from the appellant to do so, may have told the appellee that the filling out of the blanks in the application was a mere form, did not affect its validity as a contract and was not material upon the questions of notice. The question of whether or not the appellee had notice of the obstruction was a question of fact not dependent upon the authority of the office boy to waive the reading of the questions contained in the application.

Having admitted the application in evidence, it was proper for the court to instruct the jury that it was not a contract by which the appellee assumed the risk of injury from the projecting shed, but was submitted to them upon the question of notice of the existence of such danger. There was no error in receiving evidence to show the circumstances under which the application was signed. The appellee was not concluded by the contents of the application. As stated in the case of Railway v. Hauer, 43 Southwestern Reporter, 1079, the statements in the application were not contractual, and it was competent to show by parol evidence that the appellee did not know of the obstruction. The fact that the superintendent relied upon the statement in employing Darby could not give it the force of a contract. We find no error in the charge of the court complained of under the twenty-fifth assignment of error, or the exclusion of the testimony shown by the twenty-sixth assignment.

The judgment of the court below will be affirmed.

*Affirmed.*

Writ of error refused.