## KANSAS CITY, M. & O. RY. CO. OF TEXAS v. MEAKIN.

(Court of Civil Appeals of Texas. Ft. Worth. March 2, 1912. Rehearing Denied April 6, 1912.)

1. RELEASE (§ 52*)—PLEADING—AVOIDANCE OF RELEASE.

In an action for personal injuries, where the defendant pleaded a release by plaintiff, who was then a minor, the fact that plaintiff was told that the release was a paper which he must sign in order to get certain expenses and wages which he believed to be due, and that it was not read to him, bore on the question of disaffirmance within a reasonable time after reaching · majority, and hence, although such facts did not show fraud, an exception to allegations to this effect in the supplemental petition was properly overruled.

[Ed. Note.—For other cases, see Release, Cent. Dig. § 92; Dec. Dig. § 52.*]

2. RELEASE (§ 52*)—REPLY—IRRELEVANT ALLEGATIONS.

In an action for personal injuries where defendant pleaded a release by plaintiff, an allegation in the supplemental petition that at the time of executing the release plaintiff did not know of defendant's general custom of requiring injured employés to sign away all their rights if it could possibly do so was irrelevant, and an exception thereto should have been sustained.

[Ed. Note.—For other cases, see Release, Cent. Dig. § 92; Dec. Dig. § 52.*]

3. MASTER AND SERVANT (§ 270*)—PERSONAL INJURIES — EVIDENCE — SUBSEQUENT REPAIRS.

In an employé's action for injuries caused by a sliver from an anvil striking him in the eye, evidence that, after the accident, a blacksmith in defendant's employ placed red hot irons on the anvil for the purpose of taking out some of its temper, was not admissible to show that the defect in the anvil could have been remedied, where no witness testified that it could not have been remedied, especially where such evidence did not show the size of the irons, the length of time they were left on the anvil, or the effect of this treatment.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 913–927, 932; Dec. Dig. § 270.*]

4. RELEASE (§ 56*)—EVIDENCE.

In an action for personal injuries by a person who while a minor executed a release which he disaffirmed after reaching his majority, evidence that he never requested secrecy as to his minority was incompetent.

[Ed. Note.—For other cases, see Release, Cent. Dig. §§ 101–105; Dec. Dig. § 56.*]

5. MASTER AND SERVANT (§ 295*)—ASSUMPTION OF RISK—EVIDENCE—ADMISSIBILITY.

In an employé's action for injuries caused by a defect in an anvil, where the only notice of the defect testified to was given to a foreman, who was not shown to have any authority to remedy it, the submission of the question whether notice hád been given to defendant was error, since under the act of 1905 (Laws 1905, c. 163), requiring notice to an employer of defects in order to avoid the defense of assumption of risk, it must be shown that the person to whom notice was given was a vice principal with authority to remedy the defect.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1168–1179; Dec. Dig. § 295.*]

6. MASTER AND SERVANT (§ 296*) — INSTRUCTIONS — CONFORMITY TO PLEADINGS AND PROOF.

In an action for injuries caused by a sliver from an anvil striking plaintiff in the eye, an allegation in the answer that the injuries 'were caused by plaintiff's negligence in striking a cold piece of iron undertaking to bend it on the anvil, and in not placing it at the proper place on the anvil, raised the issue of contributory · negligence in failing to heat the iron; and hence the refusal of an instruction that if plaintiff was negligent in failing to heat the iron, and if this negligence caused the injury, he could not recover, was error, where the main charge did not cover this point, and the evidence showed that plaintiff would not have been injured if he had heated the iron.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1180–1194; Dec. Dig. § 296.*]

7. TRIAL (§ 244*) — INSTRUCTIONS — MATTERS OF DEFENSE—AFFIRMATIVE PRESENTATION.

A defendant is entitled to an affirmative presentation by the court's instructions of any group of facts showing contributory negligence if well pleaded and supported by the evidence, but the trial court need not emphasize by a special charge; each separate fact constituting the group.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 577–581; Dec. Dig. § 244.*]

8. TRIAL (§ 251*)—INSTRUCTIONS—CONFORMITY TO PLEADINGS AND PROOF.

A charge defining the duty of a defendant if an injury sued for resulted from some other cause than that alleged by plaintiff was improper.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. § 251.*]

Appeal from District Court, Nolan County; Jas. L. Shepherd, Judge.

Action by E. C. Meakin against the Kansas City, Mexico & Orient Railway Company of Texas. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

H. S. Garrett, of Sweetwater, H. G. McConnell, of Haskell, and Blanks, Collins & Jackson, of San Angelo, for appellant. H. C. Hughes and J. F. Eidson, both of Sweetwater, for appellee.

CONNER, C. J. Appellee, Meakin, instituted this suit against the appellant railway company for · damages resulting from the loss of an eye. He alleged that while in the employ of the company at Sweetwater on July 22, 1907, and while engaged in the performance of his duty in attempting to bend

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

a "cellar bolt" over an anvil, a "sliver" from the anvil flew off and struck him in the eye, resulting in its subsequent loss. It was alleged that the anvil was of an inferior quality of steel, improperly tempered and too brittle, which caused pieces of steel to fly therefrom when the anvil was being hammered upon, and that the company was negligent in providing and maintaining such an anvil.

The defendant answered by general denial, and particularly that the injury complained of was caused by the plaintiff's negligence in attempting to bend a cold piece of iron upon the anvil, in striking it in an improper manner, and in failing to place the bolt at the proper place on the anvil to bend the same. The company further specially pleaded that any cause of action which the plaintiff may have ever had was fully settled and compromised by a written contract of settlement entered into by the parties on the 31st day of October, 1907, for a valuable consideration paid; the contract which was in writing being fully set out in the defendant's answer. To the latter special plea the plaintiff in the suit replied that at the time he signed the contract of release set up he was a minor, and did not know its nature, and that within reasonable time after discovering its character it was by him repudiated. Upon the issues above indicated a trial at the March term, 1911, resulted in a verdict and judgment in the plaintiff's favor for the sum of $7,500, from which an appeal has been duly prosecuted.

[1, 2] The exceptions to that part of appellee's supplemental petition alleging that he had been induced to sign the release relied upon by having the paper denominated to him as one which he should sign in order to obtain the payment of certain expenses and wages which he believed to be due and that said paper had not been read by him were properly overruled. True, these allegations may not show fraud of such character as to authorize a disregard of the release on that ground, but the court did not submit the issue of fraud, and we think the circumstances alleged were proper for the consideration of the jury in determining whether or not appellee had disaffirmed the contract within a reasonable time after attaining his majority, which was the only issue submitted to the jury relating to the release. Nor can we say, as urged in the first assignment, that the evidence on this issue is conclusive in appellant's favor. We think it such on the whole as required its submission. As complained in appellant's third assignment, the allegations in appellee's supplemental petition that at the time of the signing of the release he "did not know of the general custom that the defendant had of requiring its employés when injured to sign away all of their rights if it could possibly do so" are foreign to any issue in the case, and show no legal reason for avoiding the particular contract of release pleaded. The exceptions thereto should, therefore, have been sustained.

[3] While appellee was testifying as a witness in his own behalf and was being examined in chief by his counsel, he testified, among other things, that one Bill Phillips was a blacksmith who went to work for the defendant company after plaintiff came back from the hospital, and that said Phillips was still working for the defendant. He was then asked by his counsel the following question: "Now what did Mr. Phillips do with reference to that anvil after he went to work and with reference to tempering it?" To which appellee answered: "He laid drawbars on the anvil to take some of the temper out of it. It was too hard. Drawbars connect the engine with the tender, and he would leave the heated red-hot bars on the anvil, and left them laying there." Objection was made in behalf of appellant that the question "was immaterial, irrelevant, and prejudicial; that what Bill Phillips may have done to the anvil after the man was injured was immaterial, and could not shed any light on the transaction at the time; that it was a subsequent transaction, and could not have been an admission by the defendant at all; that the issue was what was the condition of the anvil at the time and what happened prior to the time; that subsequent acts would be highly prejudicial." The objections were overruled by the court and the bill of exception qualified by the statement of the trial judge that "this evidence was admitted to show that the defect in the anvil could have been remedied and also in rebuttal of Adair's testimony." We hardly think the court's explanation meets the difficulty, and a majority of us, at least, think this ruling is erroneous. Adair subsequently testified that at the time of the trial he was master mechanic for the appellant railway, although not such at the time of the injury; that the anvil under consideration was a "Peter Wright," a standard make; that anvils used in the machine shops are necessarily faced with steel very hard in order to make them durable and stand up to the work; that he had examined the anvil in question, and it was not more susceptible to breakage than other anvils that stand that kind of using; that under certain conditions all anvils of the kind will "flake off" if struck on or near a corner. But neither Adair nor any other witness testified that the anvil could not have been remedied, if indeed it was too hard and brittle, as alleged. Nor did the witness Phillips or any other witness testify relative to the size of the bars that had been left upon the anvil, the length of time they had been left lying there, or the effect in fact of the treatment stated in appellee's answer above quoted. A very natural inference, however, on the part of the jury, was that Phillips thought the anvil too hard, and by his acts

so declared, and that the defect had been remedied in the manner in which it was attempted to be remedied; no other complaint thereafter appearing. That such evidence is inadmissible in this state seems almost too well settled to require the citation of authorities. In the early case of G., C. & S. F. Ry. Co. v. McGowen, 73 Tex. 355, 11 S. W. 336, our Supreme Court say: "Where accidents have directed the attention of the company to a particular portion of the roadbed or other instrumentality that by additional safeguards would be rendered more safe, to hold as a general rule that if the desired improvement is made that the company thereby admits that it had been negligent would result in deterring the company from promptly making the improvement. Indeed, it would be a harsh rule if every change for the better is to be considered as evidence showing former negligence." See, also, M. P. Ry. Co. v. Hennessey, 75 Tex. 158, 12 S. W. 608; G., H. & S. A. Ry. Co. v. Briggs, 4 Tex. Civ. App. 515, 23 S. W. 503; G., H. & S. A. Ry. Co. v. Walker, 48 S. W. 767; Railway Co. v. Ayres, 83 Tex. 268, 18 S. W. 684; St. L. A. & T. Railway Co. v. Jones (Sup.) 14 S. W. 309; St. L., etc., Ry. Co. v. Arnold, 39 Tex. Civ. App. 161, 87 S. W. 173; Railway Co. v. Hawthorne, 144 U. S. 202, 12 Sup. Ct. 591, 36 L. Ed. 405. Of course, such evidence may sometimes be proper to rebut or explain some other fact put in evidence, as illustrated in the cases of Railway v. George, 85 Tex. 150, 19 S. W. 1036; Walker v. Brown, 66 Tex. 556, 1 S. W. 797; Railway Co. v. Johnston, 78 Tex. 536, 15 S. W. 104; and other cases cited by appellee. For instance, in the case of Railway v. Anderson, 61 S. W. 424, suit was brought for damages for negligently causing the overflow of plaintiff's premises; it being alleged that such overflow was caused by an obstruction of a certain ditch. The plaintiff was permitted to show that, when the obstruction was removed, the water receded, not as tending to show negligence in the original construction of the embankment, but merely to show the effect after the obstruction was removed. And in the case of Fordyce v. Withers, 1 Tex. Civ. App. 540, 20 S. W. 767, the defendant's witness had testified to the good condition of the track, and that it was used after the wreck without having been repaired. The witness for the plaintiff was properly allowed to testify in rebuttal that old ties had been removed and new ones placed subsequent to the wreck. In another case, St. L., etc., Ry. v. Johnston, 78 Tex. 536, 15 S. W. 104, among other things, a photograph showing a crossing to be in good repair had been admitted. In explanation witnesses testified to changes made after the accident of which complaint was made. In Railway v. Darby, 28 Tex. Civ. App. 413, 67 S. W. 446, evidence was offered in behalf of the railway that a projection which occasioned the injury to the plaintiff was necessary in the construction of the building. In rebuttal the court permitted evidence to the effect that the building remained intact after the projection had been removed. But the principle of these cases we think has no application here. Appellant's sixth assignment of error is accordingly sustained.

[4] We fail to see the materiality of the evidence of the witness Crane, as complained of in the seventh assignment of error, to the effect that appellee had never requested secrecy as to the fact of his minority.

[5] No error is perceived in that part of the court's charge complained of in the eighth assignment in view of the charge as a whole, but the majority are of the opinion that the court erred in his charge as urged in the ninth, tenth, and eleventh assignments in submitting the issue of whether or not notice had been given to the appellant of the alleged defect, for the reason that there is no evidence raising the issue. True, appellee testified that, before his injury, he "told Mythalor about pieces flying off of the anvil"; but he did not remember exactly the date at which this information was given, and admitted that he "never told Mr. O'Brien." Mr. O'Brien employed appellee, and was the vice president and general manager of the appellant company, and testified that he was personally in charge of the mechanical department, and that he alone was authorized to correct or have remedied the defect complained of. It was shown that Mythalor at one time was a master mechanic or foreman with authority to direct the performance of labor, but aside from this his authority in not shown. Indeed, O'Brien testified, and no other witness contradicted him in this particular, that "Mythalor had no authority to order a new anvil or other tools, or appliances, or to cause the anvil to be remedied, or to hire or discharge men. He had no more authority in this respect than plaintiff, E. C. Meakin." Appellee had testified to a knowledge of the brittleness or defect in the anvil complained of before his injury, and, in order to avoid appellant's plea of assumed risk on the ground that he had notified his employer of the defect, etc., as provided in the act of 1905 (see General Laws 1905, p. 386), it must be shown that the person to whom notice of the defect was given was such vice principal as had authority to remedy it.

In the thirteenth, fourteenth, sixteenth, seventeenth, eighteenth, nineteenth, twentieth, and twenty-first assignments, complaint is made of the action of the court in refusing special instructions relating to the issue of appellee's contributory negligence.

[6] The special instruction set forth in the thirteenth assignment, which we use in illustration, is as follows: "If you believe from the evidence before you that the plaintiff would not have been injured had he heated the bolt on which he was working when in-

jured before attempting to bend the same, and also believe from the evidence that a failure to heat said bolt was negligence on the part of the plaintiff when considered in the light of the circumstances under which he was working on said bolt as testified to by himself, then you are instructed that he was guilty of negligence which contributed to cause his injuries, and under the law he is not entitled to recover." The court's charge on the subject is as follows: "If you believe from the evidence in this case that plaintiff was injured by want of ordinary care on the part of the defendant, but you further find and believe that, while bending the cellar bolt over the anvil, he failed to use ordinary care to avoid danger to himself while striking with his hammer to bend the cellar bolt over the anvil, and you further believe that such failure (if any) proximately caused his injuries, then you will find for the defendant." It seems clear that the court's charge failed to include the defensive feature set forth in the special charge requested. Indeed, the court's action in refusing this special charge is defended only upon the ground that "the manner of striking the iron" was made the ground of appellant's plea of contributory negligence, but in this contention we cannot concur. Appellant alleged that, "if the plaintiff was injured at the time and manner alleged in his petition, his injuries arose by and through and on account of his own negligence in this: he was striking at a cold piece of iron undertaking to bend the same upon said anvil and was striking in a careless manner without due care for his own safety, and did not place said cold piece of iron at the proper place on said anvil to bend same, and in all of these matters he acted in a careless and negligent manner, and did not use that degree of care for his own safety that an ordinarily prudent person would have used under the same circumstances, and therefore he alone is responsible for his injuries because his said acts contributed to cause and did cause the injuries sustained." The pleading it seems to us is broad enough to raise the issue of contributory negligence in a failure to heat the bolt before attempting to bend it, and that it was pertinent appears from appellee's own testimony. He testified, among other things, that "the piece of iron I was working with was cold. * * * As to whether or not I would have been hurt had I heated the iron, I would say no, sir. * * * If I had heated it, I would not have gotten hurt. * * * If I had heated it, I would have had a good eye. I, would have had two of them." A Mr. Stallings also testified: "I was in the hospital at Ft. Worth where he (appellee, Meakin) was confined. * * * Had some conversation with him relative to the manner in which the accident occurred. He stated to me, if he had heated the iron, the accident would ,not have occurred." Other special instruc-

tions sought the submission of the issue of contributory negligence in placing the piece of iron that appellee was attempting to bend upon the square face of the anvil rather than upon its rounded end, etc.

[7] We wish to dispose of all of the remaining assignments relating to special instructions on the issue of contributory negligence by saying that it is no longer open to controversy that a defendant is entitled to an affirmative presentation of any and all acts constituting contributory negligence well pleaded which have support in the evidence. G., C. & S. F. Ry. Co. v. Mangham, 95 Tex. 413, 67 S. W. 765; M., K. & T. Ry. Co. v. McGlamory, 89 Tex. 635, 35 S. W. 1058; T. & P. Ry. Co. v. Cotts, 95 S. W. 603; H. & T. C. Ry. Co. v. Jones, 83 S. W. 29; F. W. & D. C. Ry. Co. v. McCrummen, 133 S. W. 899. But in this connection we wish to further say, as we have before had occasion to announce, that, "while it is the right of a litigant to have presented in an affirmative form any group of facts constituting a defense, this right should not be so extended as to require the trial court to emphasize by a special charge each separate fact constituting the group." F. W. Belt Ry. Co. v. Johnson, 125 S. W. 387. See, also, Railway Co. v. Samuels (Sup.) 123 S. W. 121; Railway Co. v. Haney, 94 S. W. 386; Railway Co. v. Addis, 142 S. W. 955. The practice with which we frequently meet of embodying in an independent special instruction every fact, independent though it be, constituting contributory negligence, is objectionable as having at least a tendency to magnify in the minds of the jury the importance of the defense by continual reiterations. While the question of contributory negligence is a mixed one of law and fact, it constitutes only a single defense, and we feel no hesitation in saying that the better practice in a case calling for special instructions on the subject is for counsel in a single appropriate special charge to embody the entire group of facts, not included in the court's charge, properly supporting the plea and of which there is evidence; the instruction to be so worded as to require a finding in favor of the plea in event any fact or group of facts constituting the defense may be found in the defendant's favor.

We find no error in the court's charge complained of in the twenty-second assignment on the issue of whether appellee disaffirmed the written release before referred to within a reasonable time. As far as it went, the charge cannot be said to be erroneous. We doubt, however, whether it was such affirmative presentation of this issue as was required under the evidence, and therefore are of the opinion that the special instruction on this issue mentioned in appellant's twenty-third assignment should have been given.

[8] While the charge objected to in the twelfth assignment probably does not consti-

tute reversible error for the reason that it required a finding for the defendant, we nevertheless suggest in view of a new trial that the charge seems at least inapplicable in that the court therein undertook to define appellant's duty in event the injury of which the plaintiff complained resulted from "some cause other than that the anvil was defective." The defective anvil was the sole ground of negligence alleged, and, if appellant was not guilty in this respect, it was entitled to a verdict, regardless of all other causes.

The foregoing conclusions we think sufficiently dispose of all of the assignments now material. We therefore conclude that for the errors mentioned the judgment should be reversed and the cause remanded.

Reversed and remanded.