Henderson v. Dreyfus, 26 N. M. 542.

PARKER and RAYNOLDS, J.J., concur.

(No. 2166.   May 8, 1919.)

## HENDERSON et al. v. DREYFUS

### SYLLABUS BY THE COURT.

1. The remission by the plaintiff of a part of the verdict, at the suggestion of the trial court, followed by a judgment for the sum remaining, does not deprive the defendant of his constitutional right to have the question of damages tried by a jury.                                                          P. 547

2. The trial court has the power to authorize a permissive remittitur and to enter judgment for the balance, and this although the amount remaining is not capable of definite computation from the evidence.                          P. 548

3. A remittitur will not cure a verdict excessive by reason of prejudice and passion. The reason for the rule is that, where the amount of the verdict is the result of passion and prejudice, such passion and prejudice may, and probably did, influence the jury in the determination of the other issues in the case upon the decisions of which the verdict was found.
P. 548

4. The trial court may give the plaintiff the option of filing a remittitur, and thereupon enter judgment for the balance, not only where the damages are capable of ascertainment from the evidence with reasonable certainty, but in cases of unliquidated damages, and likewise in cases where exemplary or punitive damages have been awarded.    P. 548

5. The excess of the verdict is not the determining factor in cases where a remittitur has been allowed, unless the verdict is so outrageously excessive and beyond all reason that in and of itself it clearly shows that it was the result of passion and prejudice.    P. 559

6. The trial court is in a much better position to determine whether the excessive verdict was the result of passion and prejudice, and its determination should ordinarily be accepted.    P. 560

7. Evidence reviewed, and held that, while the trial court found that a verdict in a libel suit for $35,000 was excessive, there is nothing in the record to indicate that such excess was the result of passion and prejudice.    P. 560

8. Repetition of the alleged defamatory matter or other defamatory publication of similar character are admissible to show express malice on the part of the defendant.    P. 560

9. Where the vice in an instruction is not pointed out to the trial court and proper exceptions saved, in the event the instruction is given, the appellate court will not review error predicated upon the giving of the same.    P. 567

10. Every impartial and accurate report of any proceeding in a public law court is privileged.    P. 567

11. While a person may publish a correct account of the proceedings in a court of justice, yet, if he discolors or garbles the proceedings, or adds comments and insinuations of his own in order to asperse the character of the parties concerned, it is libelous, and not privileged.    P. 567

12. Where a party in a civil case does not ask the court for an instruction limiting the effect of evidence, he cannot complain of its failure to so instruct.    P. 569

13. An appellant in a civil case cannot urge upon the court for consideration a question not raised in his assignments of error.    P. 569

14. Ordinarily the fact as to whether a witness is a member of one political party or the other would have no effect upon his testimony or the weight to which it would be entitled, and it would be improper upon cross-examination to inquire into such matter; but in a case growing directly out

of a political controversy, where the witnesses on either side may be more or less influenced by their political affiliations, it is proper on cross-examination to inquire into such matter.
P. 570

15. In objecting to admissibility of evidence, it is the duty of counsel to advise the court specifically of the ground of objection, so that the same may be intelligently ruled upon, and in order to enable counsel to obviate the objection if possible; and a general objection that evidence is incompetent, irrelevant, and immaterial, or that a sufficient foundation has not been laid for its admission, is too general. P. 573

16. Where appellant had shown by its witnesses the fact of the presentation of a flag to a party, which it was claimed in the alleged libel that appellee had desecrated, it was permissible for appellee, in rebuttal, to show that the parties who so presented the flag were intoxicated. P. 575

17. What is done by the judge or what occurs in his presence is within his knowledge and must be recited over his certificate, and cannot be made a part of the record by ex parte affidavits in support of a motion for a new trial. P. 575

18. In deciding constitutional questions, and especially where a construction of the United States Constitution is involved, a state court should, in construing the state Constitution, give great weight to opinions by the United States Supreme Court, and should, of course, follow that court in its construction of the United States Constitution. P. 548

19. Where the trial court in a libel suit made no specific finding as to passion and prejudice, its approval of the remittitur necessarily found that the verdict was excessive, but that such excess was not the result of passion and prejudice, as otherwise it would have granted defendant's motion for a new trial. P. 560

20. Where express malice in the publication of libel charging a misdemeanor under the law of the state was proven, it was a proper case for the imposition of exemplary damages.
P. 560

Error to District Court, Valencia County; M. C. Mechem, Judge.

Action by Henry Dreyfus against the New Mexican Printing Company and Bronson M. Cutting. Directed verdict for defendant Cutting, and verdict for plaintiff for $35,000 against the New Mexican Printing Company, its motion for new trial granted unless plaintiff remitted the verdict in excess of $10,000, which remittitur was filed, and judgment against the New Mexican Printing Company in that sum, and Ralph M. Henderson, its receiver, brings error. Affirmed.

E. R. WRIGHT and FRANCIS C. WILSON, both of Santa Fe, for plaintiff in error.

W. J. EATON and M. C. SPICER, both of Socorro, for defendant in error.

OPINION OF THE COURT.

ROBERTS, J.  On the tenth day of October, 1916 Henry Dreyfus filed a complaint against the New Mexican Printing Company and Bronson M. Cutting in the district court of Socorro county. As the trial court directed a verdict in favor of Mr. Cutting, no further mention need be made of his connection with the suit.

The complaint alleged that on the 7th day of October, 1916, the defendant corporation owned and published a newspaper known as the Santa Fe New Mexican; that said paper was a daily and circulated throughout the state of New Mexico, and especially in the county of Socorro; and on said date there appeared in said paper a statement as follows:

"This is the same county where a Bursum henchman named Dreyfus (meaning Henry Dreyfus, of Socorro, N. M., this plaintiff), in the days of Gov. Hagerman, tore down the American flag and stamped and spat upon it and got off with it."

The complaint further alleged that this publication was a criminal charge against the plaintiff, in that to insult the Stars and Stripes is a misdemeanor under the laws of the state. The complaint set forth that the article was wrongfully, unlawfully, willfully, and maliciously published with intent to injure and degrade plaintiff and cause the public in general to believe that he had been guilty of the crime of insulting the Stars and Stripes, and of acts and conduct against the American flag disgraceful to him as an American citizen, which would bring him into contempt among the honorable people, and that the said article was false, scandalous, malicious, and libelous, and did and does expose the plaintiff to hatred, contempt, and ridicule. Judgment in the sum of $50,000 was asked.

Henderson v. Dreyfus, 26 N. M. 542.

The defendant answered, admitting the publication, but denied that the article so published was false, malicious, scandalous, and libelous, and that it did and does expose the plaintiff to contempt and ridicule. The New Mexican Printing Company further answered that the article published was true; that the matters and things therein concerning the plaintiff were, at the time they were done by him and ever since, matters of common knowledge in the state of New Mexico, and generally believed to be true by residents of the said county and state. The answer in this regard was as follows:

"And for further answer herein, and without waiving any previous or prior defense hereinbefore interposed, the defendant says that the plaintiff ought not to have his aforesaid action against him, this defendant, because he says that before the publication of the alleged injurious article described in said complaint, as this defendant is now informed, and therefore believes, the facts and acts of the plaintiff set forth in said publication did transpire and were true in substance and in fact, and that on or about the 22d day of September, 1906, the plaintiff, then probate judge of Socorro county, and at that time closely allied with a political faction which was doing what it could to oppose the then Governor of the territory of New Mexico, Herbert J. Hagerman, became angered at the preparations made for the reception of the said Governor of the territory of New Mexico, and tore down a large American 'flag from the decorations in front of one of the business houses in the town of Socorro, state of New Mexico, rent the said national emblem into pieces, and broke up the pole to which it was attached, and threw the pieces away, and that said incident was at the time commented upon by the said Governor at a reception tendered him in the local opera house of the said town of Socorro, state of New Mexico, in the course of an address made to some 250 citizens and residents of the said town of Socorro, state of New Mexico, all of which said facts were at the time reported in the Albuquerque Morning Journal, a newspaper of general circulation throughout the state of New Mexico, under the date of September 22, 1906, and that the said Dreyfus did not at that time nor has he subsequently, so far as this defendant is informed and believes, ever denied said act or resented the publication in said newspaper of said article, notwithstanding the wide publicity thereby given to the incident."

And by way of mitigation and justification it was further alleged in the article that the Albuquerque Morning Journal, on the 24th day of October, 1911,

published and gave wide circulation to the story which was repeated in the New Mexican and made the subject of a suit, and further that the matters and things alleged in the article upon which this suit was predicated were at the time they were done by him, and ever since had been, matters and things of common knowledge in Socorro county, state of New Mexico, and generally believed to be true by residents of the said county and state.

To the answer plaintiff filed a general denial, and upon the issues thus made up the cause came on to trial at Los Lunas, Valencia county, on the 5th day of March, 1917. The jury returned a verdict in favor of plaintiff for $35,000. The New Mexican Printing Company filed a motion for a new trial, in which, among other things, it set up the fact that the verdict was excessive and the result of passion and prejudice. The trial court entered an order ordering a new trial unless the plaintiff remitted the verdict of the jury in excess of $10,000 within ten days from the date of the order, and in case the remittitur should be filed then the motion for a new trial would be overruled. The remittitur was filed and judgment was entered against the New Mexican Printing Company in the sum of $10,000. The receiver of the New Mexican Printing Company sued out a writ of error from the Supreme Court for the purpose of reviewing the judgment. In the discussion which follows the plaintiff in error will be designated as appellant and defendant in error as appellee.

[1] The sixth point made by appellant in its brief will be first considered, because, if it should be resolved in appellant's favor, the first point would not require consideration. This contention is that the court erred in granting remittitur in this case for the reason that by so doing it deprived the defendant of a trial by jury as guaranteed by section 12 of article 2 of the Constitution of the state of New Mexico, and denied the de-

fendant the protection of the laws of the state of New
Mexico and deprived the defendant of his property
without due process, contrary to the provisions of sec-
tion 1 of the Fourteenth Amendment to the constitu-
tion of the United States.

[18] If we should follow the reasoning of the Earl
of Halsbury and Lord Davy in the case of Watt v.
Watt, decided by the House of Lords of England April
3, 1905, and reported in 2 Am. & Eng. Ann. Cas. 672,
this point would necessarily be resolved in appellant's
favor.  In deciding constitutional questions, and es-
pecially where a construction of the Constitution of
the United States is involved, a state court should, in
construing the state Constitution, give great weight to
opinions by the United States Supreme Court, and, of
course, should follow that court in its construction and
interpretation of the United States Constitution.

[2-4] In the case of Arkansas Valley Land & Cat-
tle Co. v. Mann, 130 U. S. 69, 9 Sup. Ct. 458, 32 L. Ed.
854, this identical question was decided.  The verdict
returned by the jury was for $39,958.33.  The trial
court decided that, if the plaintiff would remit the sum
of $22,833.33, the motion for a new trial would be de-
nied.  Remittitur was filed and judgment was entered
for $17,125.  The court said:

"The point was much pressed at the bar that the remission
by the plaintiff of a part of the verdict, followed by a judg-
ment for the sum remaining, deprived the defendant of his
constitutional right to have the question of damages tried by
a jury, without interference upon the part of the court, ex-
cept as it became necessary to instruct them in reference to
the principles of law governing the determination of that
question.  The precise contention is that to make the decision
of the motion for a new trial depend upon a remission of part
of the verdict is in effect a re-examination by the court, in
a mode not known at the common law, of facts tried by the
jury, and therefore was a violation of the Seventh Amend-
ment of the Constitution.

"The counsel for the defendant admits that the views ex-
pressed by him are in conflict with the decision in Northern
Pacific Railroad Company v. Herbert, 116 U. S. 642, 646

[6 Sup. Ct. 590, 29 L. Ed. 755], but he asks that the question
be re-examined in the light of the authorities.  *  *  *

"The practice which this court approved in Northern Pacific
Railroad v. Herbert is sustained by sound reason, and does
not in any just sense impair the constitutional right of trial
by jury. It cannot be disputed that the court is within the
limits of its authority when its sets aside the verdict of the
jury and grants a new trial where the damages are palpably
or outrageously excessive."

See also, Clark v. Sidway, 142 U. S. 682, 12 Sup. Ct.
327, 35 L. Ed. 1157, and Gila Valley, G. & N. R. Co. v.
Hall, 232 U. S. 94, 34 Sup. Ct. 229, 58 L. Ed. 521.

Innumerable cases where permissive remittiturs were
made and motion for a new trial thereupon denied will
be found collected in a case note to the case of Tunnel
Mining & Leasing Co. v. Cooper, 39 L. R. A. (N. S.)
1064, and this although the amount remaining is not
capable of definite computation from the evidence. An
examination of the cases there found will disclose that
the overwhelming weight of authority in this country
upholds the view that the trial court has the power to
authorize a permissive remittitur, and to enter judg-
ment for the balance. This practice was approved by
the territorial Supreme Court in the case of Schofield.
v. Territory ex rel. American Valley Co., 9 N. M. 526,
56 Pac. 306, in which case the court quotes with ap-
proval from Arkansas Valley Land & Cattle Co. v.
Mann, supra, and in the case of Bank of Commerce v.
Western Union Telegraph Co., 19 N. M. 211, 142 Pac.
156, L. R. A. 1915A, 120, without discussion. It will
thus be seen that the question is settled in this juris-
diction adversely to appellant's contention, and we see
no good reason for departing from the almost uni-
versal rule in this country.

Having held that the action of the trial court in
authorizing the remittur and entering judgment
for the balance did not deprive appellant of its right
to a trial by jury, we are logically brought to a con-

sideration of the first proposition urged by appellant, viz.:

"Remittitur cannot cure verdict excessive by reason of prejudice and passion."

A great many courts hold that remitturs are allowable although the amount of the original verdict is the result of prejudice and passion. Craig v. Cook, 28 Minn. 232, 9 N. W. 712; Trow v. White Bear, 78 Minn. 433, 80 N. W. 1117; Bremer v. Minneapolis, St. P. & Ste. M. R. Co., 96 Minn. 469, 105 N. W. 494; Goss v. Goss, 102 Minn. 346, 113 N. W. 690; Western U. Teleg. Co. v. Frith, 105 Tenn. 167, 58 S. W. 118; Alabama G. S. R. Co. v. Roberts, 113 Tenn. 488, 82 S. W. 314, 67 L. R. A. 495, 3 Ann. Cas.937; Gulf, C. & S. F. R. Co. v. Darby, 28 Tex. Civ. App. 413, 67 S. W. 446; Gulf, B. & K. C. R. Co. v. O'Neill, 32 Tex. Civ. App. 411, 74 S. W. 960; Galveston, H. & N. R. Co. v. Wallis, 47 Tex. Civ. App. 120, 104 S. W. 418; Reddon v. Union P. R. Co., 5 Utah, 344, 15 Pac. 262 (cited and followed in Kennedy v. Oregon Short Line R. Co., 18 Utah, 325, 54 Pac. 988); Brown v. Southern P. R. Co., 7 Utah, 288, 26 Pac. 579; Gillen v. Minneapolis, St. P. & S. Ste. M. R. Co., 91 Wis. 633, 65 N. W. 373; Heimlich v. Tabor, 123 Wis. 565, 102 N. W. 10, 68 L. R. A. 669; Beach v. Bird & W. Lumber Co. 135 Wis. 550, 116 N. W. 245; McNamara v. McNamara, 108 Wis. 613, 84 N. W. 901. But the great weight of authority is to the effect that a remittitur will not cure a verdict tainted by prejudice and passion. Southern P. Co. v. Tomlinson, 4 Ariz. 126, 33 Pac. 710 (dictum); Loewenthal v. Streng, 90 Ill. 74; Chicago & N. W. R. v. Cummings, 20 Ill. App. 333; Chicago & A. R. Co. v. Barnett, 56 Ill. App. 384; West Chicago Street R. Co. v. Krueger, 68 Ill. App. 450; West Chicago Street R. Co. v. Johnson, 69 Ill. App. 147; Chicago & E. R. Co. v. Binkopski, 72 Ill. App. 22; West Chicago Street R. Co. v. Wheeler, 73 Ill. App. 368 (in effect); Chicago City R. Co. v. Fennmore, 78 Ill. App. 478; Pennsylvania Co. v. Greso, 78 Ill. App. 127; Nicholson v. O'Donald, 79 Ill. App.

195; North Chicago Street R. Co. v. Hoffart, 82 Ill. App. 539; Chicago Terminal Transfer R. Co. v. Helbreg, 99 Ill. App. 563; Pittsburg, C. C. & St. L. R. Co. v. Story, 104 Ill. App. 132; Belt R. Co. v. Charters, 123 Ill. App. 322; Sackheim v. Miller, 136 Ill. App. 132 (see, contra, Illinois C. R. Co. v. Ebert, 74 Ill. 399); Ahrens v. Fenton, 138 Iowa, 559, 115 N. W. 233; Atchinson, T. & S. F. R. Co. v. Cone, 37 Kan. 567, 15 Pac. 499; Steinbuchel v. Wright, 43 Kan. 307, 23 Pac. 560; Atchison, T. & S. F. R. Co. v. Dwelle, 44 Kan. 394, 24 Pac. 500; Parsons & P. R. Co. v. Montgomery, 46 Kan. 120, 26 Pac. 403; Bell v Morse, 48 Kan, 601, 29 Pac. 1068; Drumm v. Cessnum, 58 Kan. 331, 49 Pac. 78; Atchison v. Plunkett, 61 Kan. 297, 59 Pac. 646; Argentine v. Bender, 71 Kan. 422, 80 Pac. 935 (dictum); Chitty v. St. Louis, I. M. & S. R. Co., 148 Mo. 64, 49 S. W. 868; Partello v. Missouri P. R. Co., 217 Mo. 645, 117 S. W. 1138; Doty v. Steinberg, 25 Mo. App. 328; Adcock v. Oregon R. Co., 45 Or. 173, 77 Pac. 78 (dictum). And the territorial Supreme Court, in the case of Corcoran v. Albuquerque Traction Co. 15 N. M. 9, 103 Pac. 645, approved of the majority rule, but in that case refused to hold that the verdict was the result of passion and prejudice, and said:

"The plaintiff suffered an injury, and the jury simply overestimated that injury, as the trial court found."

In Bank of Commerce v. Western Union Telegraph Co., supra, the rule was also approved by this court.

The reason for the rule is that, where the amount of the verdict is the result of passion and prejudice, such passion and prejudice may and probably did influence the jury in the determination of the other issues in the case upon the decision of which the verdict was founded. In other words, in the absence of such improper influences, the jury might have resolved the issues in favor of the party against whom the verdict was rendered. Arkansas Cattle Co. v. Mann, supra, and cases cited supra.

The majority rule, which undoubtedly is the correct rule, is easy of application where the trial court finds that the verdict was excessive by reason of passion and prejudice. In such event it is the duty of the trial court to grant a new trial. Failing so to do, the appellate court should, of course, remand the cause for a new trial before a jury free from prejudice. The trial court hears the evidence, sees the witnesses, hears the arguments of counsel, and senses the atmosphere of the trial. and is in a position to know whether the verdict was the result of passion and prejudice. Where the trial court simply requires the filing of a remittitur, but does not find that the excess was the result of passion and prejudice, much difficulty is experienced by the appellate courts in determining this question. Some of the appellate courts set aside a verdict under such circumstances, stating as the ground for such action that the verdict was so excessive as to imply such passion and prejudice, and the same courts have refused in other cases to take such action. This is clearly evidenced by a review of the cases cited by appellant in support of its contention and a comparison of such cases with later expressions by the same courts, in connection with the reasons given in the cited cases as a basis for the holding. The following cases are cited: Tunnel Mining & Leasing Co. v. Cooper, 50 Colo. 390, 115 Pac. 901, 39 L. R. A. (N. S.) 1064, Ann. Cas. 1912C, 504; Alabama G. S. R. Co. v. Roberts, 113 Tenn. 488, 82 S. W. 314, 67 L. R. A. 495, 3 Ann. Cas. 937; Southern Pac. Co. v. Fitchett, 9 Ariz. 128, 80 Pac. 359; Seaboard Air Line v. Randolph, 129 Ga. 796, 59 S. E. 1110; Chicago & Electric R. Co. v. Goebel, 129 Ill. App. 152; Ahrens v. Fenton, 138 Iowa, 559, 115 N. W. 233; Leek v. Northern Pac. R. Co., 65 Wash. 453, 118 Pac. 345; Steinbuchel v. Wright, 43 Kan. 307, 23 Pac. 560; Loewenthal v. Streng, 90 Ill. 74; Burdict v. Mo. Pac. R. Co., 123 Mo. 221, 27 S. W. 453, 26 L. R. A. 384, 45 Am. St. Rep. 528; Plaunt v. Ry. Transfer Co., 90 Minn. 499, 97 N. W. 433; North Chicago St. R.

R. Co. v. Hoffart, 82 Ill. App. 539; Chicago Term. Transfer Co. v. Helbreg, 99 Ill. App. 563; Belt Ry. Co. v. Charters, 123 Ill. App. 322; Ewing v. Stickney, 107 Minn. 217, 119 N. W. 802.

The case of Tunnel Minning & Leasing Co. v. Cooper, supra, was based upon a provision of the Code of Colorado which authorized a new trial for excessive damages given under the influence of passion or prejudice. The court held that under this provision trial courts have no longer power to set aside verdicts merely excessive, but can do so only when it has also found that the excess award is due to passion or prejudice. In a later case, Colorado & S. Ry. Co. v. Jenkins, 25 Colo. App. 384, 138 Pac. 437, the court ordered a remittitur of $1,100 from a verdict of $5,100. In that case the court upheld the judgment, and in referring to the Tunnel Mining Co. Case said:

"It must be apparent to every one that the size of the verdicts rendered in those cases, the amount which the trial court required the plaintiff in each case to remit, and the specific findings on the part of the Supreme Court that there was passion and prejudice clearly manifest in each of said cases, are sufficient in themselves to distinguish those cases from the case at bar."

The case of Railroad Co. v. Roberts, supra, affords no support for appellant's contention. The court sets forth the rule for which appellant here contends, and cites in support thereof 18 E. of P. & P. 144, and says:

"We cannot admit the soundness of the view of these cases under our practice. If a jury, through passion, prejudice, and caprice, has given a judgment, whether excessive or not, when the facts do not warrant any judgment, it is the practice of this court to set aside the verdict, because there is no evidence to support it.

"But when the court can see that there is liability, and especially when that liability is conceded for some amount, as in the present case, and the only error is the reason to set aside the verdict in toto, if justice and right can be reached by reducing the damages."

The court upheld the right to require a remittitur.

In a later case, Grant v. Louisville & N. R. Co., 129 Tenn. 398, 165 S. W. 963 the Supreme Court of Tennessee said:

"The practice now, however, is firmly established in Tennessee, and although a verdict is so excessive as to indicate that it was influenced by passion, prejudice, or caprice, it may be cured, and will stand, if a remittitur is accepted by the plaintiffs, and the verdict reduced to a reasonable amount."

The case of Southern Pac. Co. v. Fitchett, supra, was departed from by the Supreme Court of Arizona in the later case of Gila Valley, G. & N. R. Co. v. Hall, 13 Ariz. 276, 112 Pac. 845, and this decision was affirmed by the Supreme Court of the United States. See 232 U. S. 94, 34 Sup. Ct. 229, 58 L. Ed. 521. In the case of Seaboard Air Line Co. v. Randolph, supra, in an opinion by Justice Lumpkin, the court holds, following prior decisions, that the trial court in no case has the right to require a remittitur, except where from the application of the law of evidence "excess can be accurately ascertained." While adhering to the former cases cited in the opinion, the court said:

"If the question were an original one, something might be said in favor of the practice adopted in some other states, where, if the presiding judge approves the findings so far as the question of liability is concerned and thinks that the plaintiff is entitled to recover against the defendant, but that the amount found is too large to be approved by him, he may allow a certain amount to be written off, and if the excess be voluntarily relinquished, the amount of the verdict would no longer be cause for a new trial."

The cases cited from the Illinois Court of Appeals do support appellant's contention, but in case of Sandy v. Lake Street Electric R. Co., 235 Ill. 194, 85 N. E. 300, the Supreme Court said:

"Remittiturs, in actions ex delicto, by the trial and Appellate Courts have been approved by this court a number of times. Chicago City Railway Co. v. Gemmill, 209 Ill. 638 [71 N. E. 43], and cases there cited; Hanchett v. Haas, 219 Ill. 546 [76 N. E. 845]. There are cases of such character that it would be difficult, if not impossible, to determine what amount should be remitted from a verdict, but the practice of allow-

ing remittiturs in cases of the character of the one at bar has long been sustained in this state. In North Chicago Street Railroad Co. v. Wrixon, 150 Ill. 532 [37 N. E. 895], in discussing this question, it was said ([150 Ill.] p. 535 [37 N. E. 896]): 'But we are committed to the practice of allowing remitturs in actions ex delicto both in the trial and Appellate Courts to such sum as shall to the court seem not excessive and affirming as to the balance of the judgment.' "

Appellant's contention is likewise supported by Ahrens v. Fenton, supra, and there has apparently been no departure from the rule in Iowa. In that case the court reduced exemplary damages from $800 to $500. The court said:

"But as the allowance of exemplary damages is wholly within the discretion of the jury in a case where there is a legal basis for the allowance of such damages (Reibenstein v. Clark, 104 Iowa, 287 [73 N. W. 588]), the finding of the jury can only be interfered with on the ground of such error of judgment as to indicate passion and prejudice, and where the allowance is so grossly excessive under the evidence that it should not be allowed to stand, the verdict should be set aside."

In the case of Leek v. North Pac. R. Co., supra, plaintiff recovered damages for $500 for being ejected from the train. The court said, quoting with approval from a prior case:

"We might follow our usual practice and reduce the judgment to such sum as the respondent is entitled to recover in our view of the facts, and require him to accept that amount or submit to a new trial, but the right of recovery is doubtful at best, and the verdict discloses such passion and prejudice on the part of the jury that it would be unjust to hold a litigant foreclosed by any of the findings. The judgment is therefore reversed, and the cause remanded for a new trial."

In a later case, Peterson v. Seattle Electric Co., 71 Wash. 349, 128 Pac. 650, for personal injuries, plaintiff recovered a verdict for $15,250. The trial court reduced the verdict to $10,250. The Supreme Court gave plaintiff the option of accepting a remittitur of $2,500 and affirming the judgment in the event of such acceptance, thereby reducing the original verdict by almost one-half.

In the case of Steinbuchel v. Wright, supra, an action for slander, the jury returned a verdict for $4,000, and the court required a remittitur of $3,500. The court held that the damages were so excessive as to show that the verdict was given under the influences of passion or prejudice, and therefore that the amount should be submitted to the judgment of another jury.

In a later case, Lupher v. A. T. & F. R. Co., 86 Kan. 712, 122 Pac. 106, Ann. Cas. 1913 C. 498, the trial court required the plaintiff to remit $4,000 from a verdict of $17,000. The court, after referring to the Steinbuchel-Wright Case, said:

"In the present case the record simply discloses that the trial court believed the verdict to be excessive to the amount of $4,000; but there is nothing to show that the excess in the amount was caused by the passion or prejudice of the jury, or that the trial was not fairly conducted."

And the judgment was sustained.

In Kansas they have the same Code provision as in Colorado, viz: That the verdict shall be vacated wherever it appears that it was given under the influence of prejudice or passion.

In the case of Burdict v. Mo. Pac. R. Co., supra, the court said.

"If it can be seen and fairly said the jury gave the excessive verdict by reason of prejudice, passion, or any other improper motive, a new trial should be awarded; for the inference would be a fair one that the finding for the plaintiff was also brought about by improper influences, and this is especially so when there is any doubt as to the right of the plaintiff to recover. Indeed, the verdict may be so large and out of all reason as, of itself, to furnish sufficient evidence that it was the result of passion or some other improper influence. But it does not follow that a verdict is necessarily the result of prejudice or passion because it is excessive. It might just as well be said that the mistakes made by appellate judges are the offspring of prejudice. Jurors, like other persons, may, and often do, err, though conscientious in the discharge of their duties. Common experience teaches us that verdicts differ widely, even in the same case, where the evidence as to the extent of the injury is precisely the same, and this,

too, when there is nothing whatever from which the conclusion can be fairly drawn that the jurors were under the influence of any improper motive. Nor is there anything strange in this when it is remembered that no exact guide can be given as to the amount of damages to be allowed. In the very nature of things, the amount of damages must, to a large extent, rest with the jury. This court is constantly reviewing verdicts in this class of cases, and is in a position to be able to judge when a verdict is so far beyond those usually allowed in like cases as to be excessive, and litigants ought to have the benefit of its judgment."

In the case of Plaunt v. Railway Transfer Co., supra, the verdict was reduced from $600 to $150. The court said that the diminution was so great that it was obliged to conclude that the court below was of the opinion that the verdict was a result of passion and prejudice, and a new trial was awarded.

In the later case of Goss v. Goss, 102 Minn, 346, 113 N. W. 690, a verdict of $4,000 was reduced to $3,000. The court said:

"The rule is now too well settled to be seriously questioned that the trial court may, in actions of tort, as well as in actions on contract, in the exercise of a sound judicial discretion, when it deems a verdict excessive and the result of passion and prejudice on the part of the jury, deny a new trial on condition that the prevailing party remit such sum as shall leave the recovery not excessive in the judgment of the court. When, however, the damages are so excessive, and 113 N. W. 690, a verdict of $4,000 reduced to $3,000. the circumstances as disclosed by the evidence as to other issues are such, as to indicate a fair probability that the jury was influenced by passion or prejudice in the determination of the other issues, a new trial should be granted. Whether in any given case a new trial should be granted or denied on condition that the verdict be reduced rests largely in the sound discretion of the trial court."

It will be noted that in some of the later cases the court approved of the remittitur, even where the original verdict was the result of passion and prejudice.

In a case note to the case of Tunnel Mining & Leasing Co. v. Cooper, 39 L. R. A. (N. S.) 1064, will be found collected several hundred cases upholding the right of the trial court, and in many instances of the

appellate court, to require a remittitur as the alterna-
tive of granting a new trial to the unsuccessful party.
It would unduly lengthen this opinion to set out the
cases. This appears to be the almost universal prac-
tice in the state courts, and has met with the unquali-
fied approval of the Supreme Court of the United
States.

[5] And the rule is applied to cases not only where
the damages are capable of ascertainment from the evi-
dence with reasonable certainty, but in cases of un-
liquidated damages, and likewise in cases where ex-
emplary or punitive damages have been awarded. In
Sutherland on Damages (4th Ed.) § 460, p. 1518, the
author says:

"Though the case be one in which exemplary damages may
be awarded if the trial court grants a new trial because the
award is inadequate, it may suggest, so far as the defendant is
concerned, the sum he may pay to avoid such trial. The
tendency of the late decisions in the state courts, except as
has been otherwise indicated, is in the direction of unqualified
support for the practice which allows the Appellate and trial
courts, in cases in which excessive damages have been
awarded, and in which plaintiff is entitled to substantial
damages, to indicate the excess and give him the option to
remit it and take judgment for the residue or be awarded
a new trial."

The case of Gila Valley, G. & N. Co. v. Hall, supra,
decided by the Supreme Court of the United States,
was a personal injury case, and that court approved
of a judgment where one-half of the verdict had been
remitted. Many of the cases heretofore cited were
cases of unliquidated damages.

If mere excess in the verdict indicated passion and
prejudice on the part of the jury, then in no case could
a remittitur be allowed under the majority rule. The
excess of the verdict, then, is not the determining fac-
tor in such cases, unless the verdict is so outrageously
excessive and beyond all reason that in and of itself
it clearly shows that it was the result of passion and
prejudice.

[6,19] The trial court, as we have said, is in a much better position to determine whether the excessive verdict was the result of passion or prejudice, and its determination should ordinarily be accepted. Gila Valley, G. & N. R. Co. v. Hall, supra When appellate courts refused to accept the determination of the trial court as to the existence of passion and prejudice, and there is nothing in the record which apparently was calculated to arouse the prejudice and passion of the jury, and no error has intervened, and the amount of the damages to be awarded, or of the verdict, is a question upon which the minds of reasonable men might differ, and the verdict is within the instructed amount which the jury is authorized to return, and such appellate court determines for itself the question as to whether there was such passion and prejudice, and finds that it did exist, basing such finding solely upon the amount of the verdict, and the evidence discloses no rule by which the damages or award might be determined, and the law affords none, further than the unbiased and unprejudiced judgment of reasonable men, how can such appellate court, in all cases where the verdict has been found by the trial court to be excessive, refuse to set it aside? In other words, if an excessive verdict in one case indicates passion and prejudice on the part of the jury to the appellate court, absent the opportunity afforded the trial judge of personal observation and the atmosphere of the trial, why will not such excessive verdict in all cases indicate such passion and prejudice? While the trial court in this case made no specific finding upon the question, nevertheless by its action in approving of the remittitur it necessarily found that the verdict was excessive, but that such excess was not the result of passion and prejudice; otherwise it would have granted appellant's motion for a new trial.

[7, 8, 20] Thus we are brought to a consideration of the question as to whether the record here shows that the original verdict was the result of passion and

prejudice on the part of the jury.    This will require
a consideration of the facts in the case.

Appellee was, and had been for many years, a resi-
dent of the city of Socorro, Socorro county, N. M., and
apparently a man of good standing in that community.
He had been a deputy sheriff, cell house keeper at the
state penitentiary, marshal for many years of the city
of Socorro, and in 1911 a candidate for sheriff of So-
corro county.    At the time of the publication of the
alleged libel he was not a candidate for public office
and held no official position.    Appellant, by its pub-
lished article, accused appellee of having desecrated
the flag of the United States, by spitting upon it,
stamping upon it, and breaking its standard and throw-
ing it in the dust.    This was a misdemeanor under the
laws of the state.    Express malice, as we shall here-
after show, was proven; consequently it was a proper
case for the imposition of exemplary damages.    Col-
bert v. Journal Publishing Co., 19 N. M. 156, 142 Pac.
146.    The complaint asked damages in the sum of
$50,000, and the jury was told in the instructions that
it should award proper damages to compensate appellee
for the injuries suffered, and that it might award ex-
emplary damages, but that the total of such damages
should not exceed the sum of $50,000.    There was no
guide as to the measure of damages, save the unbiased
judgment of the jury.    The jury fixed the amount of
damages at $35,000, and this was, in the judgment of
the trial judge, $25,000 too high.    The amount of the
proper award in the case was a question upon which
there might be much divergence of opinion.    One man
might think that even $35,000 was too low where the
person libeled had been unjustly and wrongfully ac-
cused of desecrating the flag of his country by spitting
upon it and otherwise evidencing his disloyalty to it
and the institutions for which it stands, and wide
circulation being given the libel, in other words, being
placed in the same class with Benedict Arnold; while

others might think a much smaller amount was amply sufficient.

The case was tried by the jury just a few days before the declaration of war by the United States against Germany, and at a time when the patriotic impulses of the people had been aroused, and increased love and devotion for the flag was everywhere in evidence. At the time of the trial, had any one desecrated the flag, as Dreyfus was accused of having done, his life would not have been safe. But this intense patriotism on the part of the people generally could hardly amount to such passion and prejudice against the appellant as would vitiate the verdict. It was not the prejudice against the appellant but it did possibly move the jury to give a larger verdict than the trial court would approve.

Appellant cites several cases where much smaller verdicts have been returned; even where the person libeled had been charged with the commission of a felony. Indeed, there are but few cases where so large a verdict has been returned and upheld, but there are some where even a much larger verdict has been sustained. It argues that appellee was only charged with a misdemeanor; hence there was no warrant for the return of such a verdict. But there is no yardstick by which to measure the damages, and we apprehend that any man, imbued with patriotism and love of country, would suffer much greater from a charge of disloyalty and desecration of the flag than he would even though charged with a felony, and the stigma upon his family and his name would be much greater.

In Newell's Slander & Libel (3d Ed.) p. 1092 et seq., will be found many cases where verdicts returned in libel suits have been held not to be excessive, the verdicts ranging from very small amounts to as high as $50,000, and on page 1107 will be found cases in which verdicts have been held excessive. Many cases in suits for unliqui-

dated damages as large or larger remitturs have been ordered and the judgment upheld on appeal. A few cases will suffice: Partello v. Railroad, 240 Mo. 122, 145 S. W. 55, the verdict was reduced from $30,000 to $10,000; Cook v. Globe Printing Co. 227 Mo. 471, 127 S. W. 332, the reduction was from $150,000 to $50,000; Finnegan v. Railroad, 261 Mo. 481, 169 S. W. 969, the verdict was for $50,000 and was reduced to $25,000 by the trial court.

Appellant attempted to show that the charge published was true, and placed upon the stand for this purpose one J. W. Wilson. He did substantiate the truth of the charge, but was impeached by a showing that his reputation for truth and veracity was bad. Four or five eye witnesses to the incident upon which the charge was predicted testified to its untruth, and the jury elected to believe them in preference to Wilson.

In mitigation it showed that in 1906 a rumor was in general circulation to the effect that Dreyfus had done the things charged, and that the charge was published in the Albuquerque Journal in 1911. The writer of the article in question testified that he had heard the rumor and believed it to be true, but failed to show that he had made any investigation to ascertain the truth of the same. True, he said he had made inquiries, but he failed to state the name of any person of whom he sought information. But all this evidence, assuming that it was admissable, which is very questionable (17 R. C. L. pp. 449-451; Odgers on Libel and Slander (5th Ed. pp. 394, 395; Newell on Slander and Libel [3d Ed.] § 1048), only went to the amount of the damage, and there is nothing to indicate that the jury disregarded it, save only the amount of the verdict.

Appellant argues that the evidence shows that all the property which it owned was mortgaged, and that in view of its poverty the verdict was so excessive as to indicate passion and prejudice. It is true there are copies of two mortgages executed by appellant in the record for some-

thing like $50,000 or $60,000, but these were introduced
for the purpose of showing the connection of Col. Cutting
with the paper; the mortgage having been executed to
secure an indebtedness owing by the corporation to him.
But there is not a syllable of evidence showing the value
of the property owned by appellant, and, so far as this
record discloses, it may have been possessed of unlimited
means.   There is an apparent conflict in the authorities
as to the right of the plaintiff to show the wealth of the
defendant and of the defendant to show his poverty.
17 R. C. L. p. 454.   But, where exemplary damages are
claimed, evidence of defendant's poverty has been held
admissable.   Rea v. Harrington, 58 Vt. 181, 2 Atl. 475,
56 Am. Rep. 561.   But in this case, as there was no
showing as to the poverty of the appellant, this fact, if
it existed, was not before the jury for consideration.

Appellant argues that, since express malice was not
proven in the case, the jury could not assess punitive
damages in its verdict.   This may be accepted without
question as a correct statement of the law, but we can-
not agree with appellant as to the facts.   There was a
subsequent publication of the slanderous article, or a
publication of similar nature, which we shall later show
was properly admitted in evidence.   In the case of Col-
bert v. Journal Publishing Co., 19 N. M. 156, 142 Pac.
146, in an opinion by Mr. Justice Hanna, this court said:

"The authorities, in speaking of malice as an element in
libel or slander, divide it into two classes, to wit, malice in
law and malice in fact.   Malice in law is implied malice and
arises by operation of law when a publication is made without
lawful excuse.   Times Pub. Co. v. Carlisle, 94 Fed. 762 [36 C.
C. A. 475].   Actual malice or malice in fact, sometimes de-
nominated as express malice, implies personal hatred or ill
will towards the plaintiff, or wanton disregard of the civil
obligations of the defendant toward the plaintiff.   Jillison v.
Goodman, 43 Me. 287, 69 Am. Dec. 62; Childers v. San Jose,
etc., Co. [105 Cal. 284] 38 Pac. 903 [45 Am. St. Rep. 40];
Cooley on Torts (3d Ed.) § 245; Odgers on Libel and Slander
(5th Ed.) 341 et seq.; 25 Cyc. 372; Times Pub. Co. v. Carlisle,
94 Fed. 762 [36 C. C. A. 475].

Henderson v. Dreyfus, 26 N. M. 542.

·'It has been quite generally held by the courts of this country that repetitions of the alleged defamatory matter or other defamatory publications of a similar character are admissible to show actual or express malice on the part of the defendant. Ransom v. McCurdy, 140 Ill. 626 [31 N. E. 119]; Meyer v. Bohlfing, 44 Ind. 238; Sharp v. Bowler, 103 Ky. 282 [45 S. W. 90]; Bailey v. Bailey, 94 Iowa, 598 [63 N. W. 341]; Davis v. Starrett, 97 Me. 568, 55 Atl. 516; Hastings v. Stetson, 130 Mass. 76; Frederickson v. Johnson, 60 Minn, 337, 62 N. W. 388; Krup v. Corley, 95 Mo. App. 610 [69 S. W. 609]; Enos v. Enos, 135 N. Y. 609 [32 N. E. 123]; Cavanaugh v. Austin, 42 Vt. 576; Hansbrough v. Stinnett, 25 Grat. [Va.] 495; Swindell v. Harper, 51 W. Va. 381, 41 S. E. 117; Odgers, p. 349; Newell (2d Ed.) p. 549.

"In the present case there appears to have been a republication of the original article, and other publications with reference thereto, which having been proven, furnishes the evidence of express malice, or malice in law, asserted to be lacking in this case." ·

The subsequent publication was made after certain officers of the New Mexican Printing Company had been arrested for criminal libel, and when the officers and agents of appellant knew that appellee denied the charge. Appellant is foreclosed as to this contention by the Colbert Case; hence, in determining whether this verdict is so grossly excessive as to indicate passion and prejudice, we must take into consideration the fact that the jury included in its award exemplary damages by way of punishment.

In arriving at the question as to whether the size of this verdict indicates passion and prejudice, let us glance at the guide posts pointing in either direction:

First. The jury was told that they could properly allow compensatory and exemplary damages, malice in fact having been shown, not to exceed $50,000.

Second. The verdict of the jury and the evidence supporting it showed that the article was published of and concerning appellee without excuse or justification; that at the time of its publication appellee was not before the public in any manner, and apparently was taking no part in the political campaign which inspired its publication.

Third. The publication was admitted and the evidence abundantly established its untruth.

Fourth. By the article appellee was charged with desecrating the United States flag.

Fifth. No error intervened upon the trial of the cause (at least none has been called to our attention), and no fact is shown which was calculated to arouse the prejudice or passion of the jury.

Sixth. The trial judge evidently found that the verdict was not the result of passion and prejudice, and he possessed superior advantages over the appellate court in determining this question.

Seventh. Larger verdicts in similar cases have been upheld, and much larger remittiturs have been required, and appellate courts have unheld the same as being free from passion and prejudice, viz.: Cook v. Globe Publishing Co., 227 Mo. 471, 127 S. W. 332, original verdict $150,000 reduced by remittur to $50,000; Duke v. Morning Journal Association (C. C.) 120 Fed. 860, and 128 Fed. 657, 63 C. C. A. 459, original verdict $36,000 reduced to $20,000; Minter v. Bradstreet Co., 174 Mo. 444, 73 S. W. 668, a verdict for $27,000 was held not excessive; Young v. Fox, 26 App. Div. 261, 49 N. Y. Supp. 634, verdict for $25,000 held not excessive; Press Pub. Co. v. Gillette, 229 Fed. 108, 143 C. C. A. 384 verdict for $20,000 held not excessive.

As pointing toward passion and prejudice we have two circumstances alone, viz. the size of the verdict, and the further fact that in many cases for libel, even where a felony was charged, much smaller verdicts have been returned.

In view of all the facts and circumstances, as heretofore recited, we are not prepared to say that the verdict in question was returned as the result of passion and prejudice on the part of the jury; hence this question must be resolved against appellant.

[**9**]  The second point urged is that the court erred in giving instruction No. 5 to the jury, on the subject of punitive damage.  No objection was interposed by appellant to the giving of this instruction, and no exception saved, and under the familiar rule that, where the vice in an instruction is not pointed out to the trial court and proper exceptions saved, in the event the instruction is given, this court will not review error predicted upon the giving of the same (Spencer v. Gross Kelly & Co., 22 N. M. 433, 163 Pac. 1087; Tietjen v. McCoy, 24 N. M. 94, 172 Pac. 1042), this question is not here for review.

[**10,11**]  The third point urged is that the court erred in admitting in evidence Plaintiff's Exhibit B, for the reason that it was privileged and could not be afforded to prove malice, nor for any other purpose in the case.  The exhibit in question is as follows:

[Taken from Santa Fé New Mexican, October 11, 1916.]
"Mr. Bursum is working this time through one of his tools named Henry Dreyfus, his city marshal in the town of Socorro, where they bulldoze bill posters and crippled movie proprietors and threaten their livelihood if they dare to exhibit Democratic bills or slides.  The city marshal is the gentleman whom Mr. Bursum ran for sheriff in 1911 and who was repudiated by the dear voters.  Mr. Bursum, through Henry Dreyfus and through Hon. Judge Amos Green, a Bursum justice of the peace, through an illegal warrant, to-day sought to seize and capture the person of Col. Bronson M. Cutting, president of the New Mexican Printing Company, and hale him in chains, manacles, fetters, and disgrace, to Mr. Bursum's Socorro county jail.  The chains, however, failed to clank.

"Sheriff Emil James, of Socorro county, arrived to-day at noon and served a warrant on Col. Cutting, sworn out by Hon. Judge Amos Bursum Green, on complaint of one Henry Bursum Dreyfus, charging Col. Cutting, who returned yesterday from El Paso, with wickedly libeling Dreyfus by reason of a statement printed in this paper Saturday to the effect that 'a Bursum henchman named Dreyfus, in the days of Gov. Hagerman, tore down the American flag in Socorro and stamped on it,' and otherwise desecrated it.  It will be remembered that the infamous incident of flag desecration in Socorro was one of the things used with telling effect by Gov. Hagerman and newspapers in the campaign which defeated Bursum in 1911.  Mr. Bursum, through Henry Dreyfus, who thus claims that he is the 'Bursum henchman named Henry Dreyfus'

mentioned, also brings a civil suit for libel damages in the modest sum of $50,000, papers in this case being served to-day on President Cutting and Secretary Dorman of the New Mexican Printing Company."

The rule is that evidence of the repetition of defamatory matter is competent to show malice. It is thus stated by Newell on Slander and Libel (3d Ed.) § 404:

"Any other words written or spoken by the defendant of the plaintiff, either before or after those sued on, or even after the commencement of the action, are admissible to show the animus of the defendant; and for this purpose it makes no difference whether the words tendered in evidence be themselves actionable or not, or whether they be addressed to the same party as the words sued on, or to some one else. Such other words need not be connected with or refer to the defamatory matter sued on, provided they in any way tend to show malice in defendant's mind at the time of publication."

See, also, Colbert v. Journal Publishing Co., 19 N. M. 156, 142 Pac. 146.

Was the article in question privileged? If so, it would afford no evidence of malice and was improperly admitted in evidence.

"Every impartial and accurate report of any proceeding in a public law court is privileged." Newell on Slander and Libel (3d Ed.) § 646.

And this is the general rule, and applies to all proceedings in any court of justice, superior or inferior, whether of record or not. While a person may publish a correct account of the proceedings in a court of justice, yet, if he discolors or garbles the proceedings, or adds comments and insinuations of his own in order to asperse the character of the parties concerned, it is libelous, and not privileged. Thomas v. Croswell, 7 Johns. (N. Y.) 264, 5 Am. Dec. 269.

In 17 R. C. L. p. 346, it is said:

"Although a person may publish a correct account of the proceedings in a court of justice, if he discolors or garbles the proceedings, or adds comments and insinuations of his own in order to asperse the character of the parties concerned, it is libelous."

In Newell on Slander and Libel (3d Ed.) § 647, many cases will be found illustrating the rule.

If Exhibit B is tested by the above rule, it will be found to be clearly libelous, hence not privileged. It contains comments and insinuations of the publisher tending to cast aspersion upon the character of Dreyfus, outside the facts of the judicial proceedings. One example will suffice. After reciting the statement theretofore published upon which the criminal charge was based, it continued:

"It will be remembered that the infamous incident of flag desecration was one of the things used with telling effect by Gov. Hagerman and newspapers in the campaign which defeated Bursum in 1911. Mr. Bursum, through Henry Dreyfus, who thus claims that he is the 'Burshum henchman named Henry Dreyfus' mentioned, also brings a civil suit."

See, also, 25 Cyc. 406-409.

We do not understand appellant to contend that sections 1730 and 1732, Code 1915, make this publication privileged. Those sections relate only to criminal libel, and can have no application to this case.

We conclude that the court properly permitted the second publication to go to the jury for the purpose of proving express malice.

[12,13] It is next urged that the court erred in permitting Appellee's Exhibit B to go to the jury without limiting its scope or cautioning the jury not to allow damages for such publication. There are two reasons why this alleged error cannot be considered: First, appellant did not ask the court to so instruct the jury, hence cannot complain of its failure in that regard State v. Eaker, 17 N. M. 479, 131 Pac. 489; State v. Johnson, 21 N. M. 433, 155 Pac. 721) ; second, the failure of the court to so instruct was not assigned as error, and it is well settled that an appellant in a civil case cannot urge upon the court for consideration a question not raised in his assignments of error.

[14] . The fifth point is predicted upon the action of the court in permitting counsel for appellee on cross-examination to inquire into the political affiliations of certain witnesses for the appellant.   Appellant placed upon the stand certain witnesses, for the purpose of showing that rumors were circulated in Socorro in 1906 and in 1911 to the effect that appellee had desecrated the flag, and such witnesses were asked as to whether they believed the rumors to be true.   This was admitted by the trial judge for the purpose of mitigating the damages by showing the good faith of appellant.   Some of the witnesses were asked as to their political affiliations at that time.   The evidence in the case showed that in 1906 there was a heated political controversy on between Gov. Hagerman and H. O. Bursum, one of the leading Republicans of the state.   Dreyfus was city marshal for many years, under appointment of Mr. Bursum, who was mayor of Socorro.   In 1911 Mr. Bursum was a candidate on the Republican ticket for Governor, and Mr. Dreyfus was a candidate for sheriff of Socorro county on the same ticket.   The flag incident was used for the purpose of discrediting both Bursum and Dreyfus with the voters of the state and Socorro county.   These witnesses testified that they heard rumors of the incident in 1911 and theretofore, and believed them to be true.   The court permitted the inquiry and cross-examination as to their political affiliations for the purpose of showing bias and prejudice, in order that the jury might determine what, if any influence upon their testimony their political prejudice might have.   Appellant cites but one case in support of its contention, viz. Laidlaw v. Sage, 158 N. Y. 73, 52 N. E. 679, 44 L. R. A. 216, which was a case where in a personal injury suit, counsel for plaintiff on cross examination attempted to show that defendant had no shown proper sympathy or paid proper attention to the plaintiff after he was injured.   The court held that such evidence was improper.   That case affords no support for the present contention.

Familiar principles will disclose that the evidence was

properly admitted.   In Jones on Evidence, § 821, vol. 5, p. 117, the author says:

"All matters that may modify, explain, contradict, rebut, or make clearer the facts testified to in chief by the witness may be gone into on cross-examination."

And further, at section 826, vol. 5, p. 128, the same author says:

"For the purpose of testing the credibility of a witness, it is permissible to investigate the situation of the witness with respect to the parties and to the subject of litigation, his interest, his motives, inclinations, and prejudices, his means of obtaining a correct and certain knowledge of the facts to which he bears testimony," etc.

The jury had a right to know whether the witnesses in question were affiliated with, and in some cases active in behalf of, the party which made use of the truth of the charge against Dreyfus to encompass his defeat, and likewise the defeat of the man who had appointed him to the office of city marshal, and to weigh such fact in determining whether they were unprejudiced and unbiased in the present controversy. Of course, the fact that whether a witness is a member of one political party or the other ordinarily would have no effect upon his testimony or the weight to which it would be entitled. But in a case directly growing out of a political controversy, where the witnesses on either side may be more or less influenced by their political affiliations, and where, as here, the witness might be inclined to believe or disbelieve rumors or form opinions as to the truth of a given matter, one way favorable to his party, and the other contrary to its interest, why should not the political affiliations of the witness be laid before the jury along with all the other facts, so that the jury will be in a position to determine what, if any, influence, upon the testimony of the witness his political affiliations might have? It is clearly competent on cross-examination to show the relationship existing between the witness and the parties to the case, the friendship or enmity existing between the witness and the parties, and any other fact that will enable the jury to determine whether the witness has any

motive for suppressing or discoloring the truth.   Hence
no error was committed by the trial court in permitting
the inquiry.

Our holding that there was evidence of express malice
disposes of appellant's seventh point.   Under this point
it is argued that the court should have instructed the
jury that the elements of exemplary damages could not
enter into their verdict.   The court properly refused to
so instruct the jury.

Dreyfus, as a witness, testified as follows:

"I don't remember that any person at that time asked me
anything in regard to the flag; I didn't think about the flag
until 1911, when the paper, not the New Mexican, but the
Journal, had my picture and Mr. Bursum behind me.   When
I was painted by the paper there, that I was the man that had
the flag, and Mr. Bursum right behind me, saying I was his
man—I was running as a candidate for sheriff—I made a
protest: I sent one to the New Mexican and one to the Journal
denying this."

[**15**]   Attorney for appellant objected and moved
to strike out the answer and take it from the jury "as
no foundation has been laid for his testimony."   The
trial court, in ruling on the objection, said:

"He certainly can't be denied the right to show his protest
and his denials, when you have shown by your witnesses that
they had never heard of his denials.   It doesn't come within
the rule of a certain communication—the act merely.   I will
overrule the objection.   Go ahead; save your exception."

Appellant here argues that no foundation for this
testimony was laid, because the witness did not show
that he had deposited the notice in the United States
post office, properly stamped and addressed, and in sup-
port of this condition it cites the case of Feder Silberger
Co. v. McNeil, 18 N. M. 44, 133 Pac. 975, in which case
it was held that there was a failure of proof of demand
upon the defendant for the return of the sample deliv-
ered into his custody for the reason that it did not appear
from the evidence that the letter containing the demand
had been addressed, stamped ,and deposited in a proper
place for the receipt of mail, and that the presumption

of mail being received when it is properly addressed, mailed, stamped, and deposited in a post office or post office box could not arise from the testimony that the letter had been "mailed."

From the statement made by the trial judge in ruling upon the objection it is clear that he did not have in mind the objection which appellant here urges. In objecting to the admissibility of evidence, it is the duty of counsel to advise the court specifically of the ground of objection, so that the court can intelligently rule thereon, and in order to enable counsel to obviate the objection if possible. In 9 Ency. of Evidence, p. 79, it is said:

"Thus the general objection that evidence is 'incompetent, irrelevant, and immaterial,' or that a sufficient foundation has not been laid for its admission, is too general."

In the case of Tanderup v. Hansen, 8 S. D. 375, 66 N. W. 1073, the court said:

"The objection 'that the proper foundation had not been laid' was too general to be available to the appellant in this court. The specific objection that it had not been shown that the witness could give the substance of all the testimony of the deceased witness, both on the direct and cross examination, should have been made, in order to have called the attention of the court and opposing counsel to the particular point of the objection."

See also, to the same effect, Clark v. Conway, 23 Mo. 438; Walker v. Hoeffner, 54 Mo. App. 554; People v. Conklin, 111 Cal. 616, 44 Pac. 314.

Had appellant called the attention of the court to the specific point which he now makes, and the notice had in fact been sent by mail, in the absence of proper preliminary proof, undoubtedly he court would have sustained the objection. · For the above reason this objection will not be here considered. But, aside from this, the witness later testified that a response to the notice was published in appellant's newspaper. A part of the witness' testimony in this regard was stricken by the court upon motion of appellant, but to the following

testimony appellant made no objections, and it is in the record:

"A.   It was the paper.
"Q.   Did you see the paper?   A.   Yes, sir.
"Q.   Where is the paper?   A.   I don't know."

This possibly cured the error, but it is not necessary to pass upon this question.                   ,

[**16**]   Appellant placed upon the stand Ex-Gov. H. J. Hagerman and other witnesses, who testified that Gov. Hagerman in 1906 was holding a hearing in Socorro, and that certain men came into the room where the hearing was being held, carrying a flag with a broken staff and badly mussed up, and presented the flag to Gov. Hagerman.   This was the flag which it was charged Dreyfus had desecrated.   Mr. Hagerman and other witnesses testified to rumors to the effect that Dreyfus had desecrated the flag.   By rebuttal evidence appellee sought to show that the men who brought the flag to Gov. Hagerman were intoxicated.   Appellant argues that this evidence was inadmissible, but there is no merit in this contention the story apparently originated from these men, and as appellant had gone fully into the facts of the presentation of the flag to Gov. Hagerman, it was competent for appellee to show that the men were intoxicated at the time.

[**17**]   Lastly it is urged that the court erred in not setting aside the verdict upon the affidavit showing contained in the motion for a new trial as to the misconduct of counsel, for the reason that such misconduct went to the proposition that it did not have a fair trial.   An affidavit made by one witness and filed with the motion stated positively that during the cross-examination of appellee his counsel signaled to him, by putting one hand to his face when he desired a negative answer and the other when he desired an affirmative answer, and by raising both hands when he desired a noncommittal answer. The affidavits of four other witnesses were filed, but these were not so direct and positive and afforded but very slight evidence to the charge made.

Upon the trial the matter had been called to the attention of the court, and counsel for appellee vehemently denied the charge. Nothing further was done as to the matter during the trial. The court denied the motion for a new trial, without any statement as to the alleged misconduct, but by the denial of the motion evidently found that such misconduct did not occur. In 14 Ency. of P. & P. p. 930, it is said:

"Generally the motion for a new trial is addressed to the discretion of the court, except where a party is entitled to a new trial as a matter of right. The trial court, having seen and heard all that takes place on the trial, and having better opportunities for the ascertainment of the merits of the case, is allowed a wide latitude of discernment in determining motions for new trial, and appellate courts are reluctant to interfere unless it clearly appears that such discretion has been abused."

The trial court probably did not doubt the good faith and honest belief of the witnesses who testified to the supposed signaling by the attorney to the witness, but concluded from his own observations that such did not occur. He was in a position to see and know what was taking place, and, as lawyers well know, very little escapes the notice of the astute judge.

But, aside from this, it would be an anomalous practice indeed that would cast upon a party to a suit the burden of proving or disproving some fact that occured, or is alleged to have occured, in the presence of the judge upon the trial case, and about which the judge may have personal knowledge. What occurs upon the trial of a cause, in the presense of the judge, is within the knowledge of the judge, and must be recited in the bill of exceptions, and cannot be made a part of the record by ex parte affidavits.

In the case of Peyton v. Village of Morgan Park, 172 Ill. 102, 49 N. E. 1003, the court said:

"What is done by the judge or what occurs in his presence is within his knowledge and must be recited over his certificate, and cannot be made a part of the record by ex parte affidavits."

In this case, on motion for new trial, the unsuccessful party attempted to show certain action by the judge in endeavoring to ascertain whether the jury had agreed.

In the case of Mayes v. People, 106 Ill. 306, 46 Am. Rep. 698, it was attempted to be shown by affidavit that the state's attorney had made certain unwarranted statements of fact in his closing argument. The court said:

"This is not shown by proper recitals in the bill of exceptions, as it should be if it is to be considered by us, but appears only in an ex parte affidavit of the prisoner, made and presented in support of the motion for a new trial. If the fact occured, it is to be presumed the judge knew it, and there was no need of an affidavit to bring it to his attention."

In the case of Kelly v. C. R. I. & P. R. Co., 175 Ill. App. 196, the court said:

"What is done by the trial judge and what occurs in open court in his presence is within his knowledge and must be recited in the bill of exceptions vouched for by his certificate, and cannot be made a part of the record by ex parte affidavits. If such a practice should be tolerated, then on a motion for a new trial affidavits might be filed to show what rulings the court made upon the evidence and upon the instructions. If a trial judge does not remember what occurred, he may refresh his recollection by examining the stenographer's notes, by recalling witnesses or jurors, or he may receive affidavits, but, when his recollection has been refreshed, it is he who must certify to the fact, and such fact can only be reviewed upon his certificate as to what occurred. Indeed, if after the filing of such an affidavit for a new trial the court denies the motion, it will be presumed in support of the action of the court that the presiding judge, of his own knowledge, knew that the statements in the affidavits of what occurred in open court were untrue."

Other authorities to the same effect will be found cited in the cases referred to. In the case of State v. Balles, 24 N. M. 16, 172 Pac.. 196, appellant attached to his motion for a new trial certain affidavits tending to show certain improper remarks by the trial judge to certain of the jurors who sat in a former case, tried at the same term, for their failure in that case to find the defendant guilty. We said:

"The statement is in no manner authenticated as the record in this case; it is simply contained in appellant's

motion for a new trial. We have no way of ascertaining whether it is true or not. It should have been settled as a part of the bill of exceptions."

As this question is not here for consideration, nothing further need be said.

Finding no error in the record, the judgment will be affirmed; and it is so ordered.

PARKER, C. J., and RAYNOLDS, J., concur.